```
 1                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE NORTHERN DISTRICT OF TEXAS
 2                          FORT WORTH DIVISION

 3   UNITED STATES OF AMERICA      .  CRIMINAL ACTION NO.
                                   .  4:08-CR-165-A
 4   VS.                           .
                                   .
 5   RANDALL WOLFORD                  December 15, 2008
                                   .  9:03 a.m.
 6   .  .  .  .  .  .  .  .  .  .  .  .

 7                              VOLUME 1A
                     TRIAL TRANSCRIPT OF PROCEEDINGS
 8              BEFORE THE HONORABLE JOHN H. McBRYDE
                UNITED STATES DISTRICT JUDGE, and a jury.

 9
     APPEARANCES:
10   For the United States:        Mr. Alex C. Lewis
                                   Assistant United States Attorney
11                                 801 Cherry Street, Suite 1700
                                   Fort Worth, Texas  76102
12                                 (817) 252-5200

13                                 Ms. Aisha Saleem
                                   Assistant United States Attorney
14                                 1100 Commerce Street, Third Floor
                                   Dallas, Texas  75242-1699
15                                 (214) 659-8600

16   For Defendant Wolford:        Mr. Danny D. Burns
                                   Attorney at Law
17                                 115 North Henderson Street
                                   Fort Worth, Texas  76102
18                                 (817)870-1544

19                                 Ms. Randy W. Bowers
                                   Randy Bowers Attorney at Law
20                                 3505 Airport Freeway
                                   Fort Worth, Texas   76111
21                                 (817) 348-8094

22   Official Court Reporter:      Eileen M. Brewer
                                   501 West Tenth Street, Room 424
23                                 Fort Worth, Texas  76102-3637
                                   (817) 850-6661

24
     Proceedings recorded by mechanical stenography, transcript
25   produced by computer-aided transcription.
```

```
 1                   P R O C E E D I N G S,

 2            THE COURT:  Good morning.  We're here for a trial in

 3   No. 4:08-CR-165-A, United States of America versus Randall

 4   Wolford.  Let's see, Mr. Lewis is here for the government, and

 5   are you also participating?

 6            MS. SALEEM:  Yes, Your Honor.

 7            THE COURT:  Okay.

 8            MR. LEWIS:  Aisha Saleem, Judge.

 9            THE COURT:  And do y'all have a case agent?

10            MR. LEWIS:  We do, sir.  Would you like to have him

11   brought up right now, sir?

12            THE COURT:  Well, just identify him.

13            MR. LEWIS:  The case agent in this case, Judge, will

14   be Tom Milner, Witness No. 1 on the witness list, sir.

15            THE COURT:  Let's see, who is he with?

16            MR. LEWIS:  Sansom Park Police Department, Your Honor.

17            THE COURT:  Okay.  And let's see, the defendant,

18   Mr. Wolford, why doesn't he stand and state his name for the

19   record.

20            THE DEFENDANT:  Randall Wolford.

21            THE COURT:  Okay.  And Mr. Burns is appearing on

22   behalf of him, Mr. Wolford.  And let's see, what's your name?

23            MS. BOWERS:  Randy Bowers.

24            THE COURT:  Okay.  And Randy Bowers.

25       Okay.  Is the government ready?
```

VOL. 1A,   3

```
 1              MR. LEWIS:  The government is ready, Your Honor.

 2              THE COURT:  Is the defendant ready?

 3              MR. BURNS:  Defense is ready, Your Honor.

 4              THE COURT:  Okay.  I've had the charge reprinted

 5   consistent with the second round of discussions we had by

 6   telephone Friday, and I'm going to hand down four copies of it.

 7   I believe it's exactly the way we left it.

 8        Hold on just a minute, Marjorie.  Let me -- And I'm also

 9   giving you the verdict form.

10        If any of you have any questions about the charge, take it

11   up with me no later than the noon recess so we can resolve them.

12   I understand the defendant is asking for that First Amendment

13   instruction that I declined to give.  But I believe -- the

14   indication I have was that the attorneys are satisfied with the

15   charge other than that.

16        Okay.  Call forward, Mr. Lewis, the witnesses for the

17   government.

18              MR. LEWIS:  Yes, sir.  Have them brought up behind me,

19   sir?

20              THE COURT:  Yes.  Have them come on this side of the

21   rail.

22        Okay.  Let me get you to identify yourself by name,

23   starting with the person on my right.

24              MR. ROBERTSON:  Snow Robertson.

25              MR. LEWIS:  Witness No. 7 on the list, Your Honor.
```

```
 1                    THE COURT:  Okay.  Next.

 2                    MS. PITTS:  Lauren Pitts.

 3                    MR. LEWIS:  Witness No. 5, Your Honor.

 4                    THE COURT:  Okay.  Next.

 5                    MR. PATTERSON:  Jimmy Patterson.

 6                    MR. LEWIS:  No. 6 on the witness list, sir.

 7                    THE COURT:  Okay.  Next.

 8                    MR. MILNER:  Tom Milner.

 9                    MR. LEWIS:  Witness No. 1, Your Honor.

10                    THE COURT:  Okay.  And next.

11                    MR. GIBSON:  Kyle Gibson.

12                    MR. LEWIS:  Witness No. 3, sir.

13                    THE COURT:  Okay.  Did I get them?

14                    MR. LEWIS:  Yes, sir.

15                    THE COURT:  So you won't be using Pokorney or Baylor?

16                    MR. LEWIS:  No, Your Honor.

17                    THE COURT:  Okay.  Let me have the defendant's

18      witnesses come on this side of the rail.

19                    MS. BOWERS:  Ms. D'Ann --

20                    THE COURT:  The witnesses who have already identified

21      themselves, you can go back on the other side of the rail, but

22      don't leave the courtroom yet.

23                    MR. BURNS:  Your Honor, for purposes of the record, we

24      have Kyle Gibson listed as a potential witness that we may

25      recall to get into some other matters.  He's already been sworn
```

```
 1   for the other government, and I assume that that --

 2              THE COURT:  You don't need to have him sworn twice.

 3              MR. BURNS:  Thank you.

 4              THE COURT:  Oh, I didn't swear them.  No wonder they

 5   were standing up here waiting for me to do something.

 6        Come on back around and we'll swear everybody at the same

 7   time.  It's the cold weather I'll attribute it to.

 8        Hold on just a minute.  Let me get theirs up here at the

 9   same time.

10        Who is this person?

11              MS. BOWERS:  D'Ann Steadham, Your Honor.

12              THE COURT:  Okay.  And does the defendant have any

13   other witnesses other than possibly those the government has

14   already called?

15              MR. BURNS:  Potentially, Your Honor, Mr. Wolford

16   himself.  But other than that, we have no additional witnesses.

17              THE COURT:  Well, why don't we go ahead and swear him

18   since there's a possibility he'll be a witness.  I take it

19   you're not planning to use Angie Baker.

20              MR. BURNS:  That's correct, Your Honor.

21              THE COURT:  Or Shannon Baylor.

22              MR. BURNS:  That's correct, Your Honor.

23              THE COURT:  Okay.  The witnesses now in front of me,

24   the ones that identified themselves as government witnesses and

25   then Mr. Wolford and Ms. Steadham, all raise your right hands to
```

```
 1   be sworn.

 2        (The witnesses are sworn.)

 3            THE COURT:  Okay.  And does anybody wish to invoke the

 4   rule?

 5        (No response.)

 6            THE COURT:  Apparently not.

 7        Okay.  Everybody be seated.

 8        The witnesses can do whatever they want to as far as

 9   leaving the courtroom and so on, so long as you have an

10   understanding with the attorney who called you as to when you're

11   expected to be called as a witness.  In other words, you're now

12   subject to the jurisdiction of the Court having been sworn as a

13   witness, so you have to be available to come to the witness

14   stand when the attorney who arranged for you to be here wants

15   you to come to the witness stand.  Other than that, you're at

16   liberty to go on the other side of the rail and leave the

17   courtroom, if you would like.

18        Okay.  Is there anything else we need to deal with before

19   we get the jury in the courtroom?

20            MR. LEWIS:  Judge, just from the government,

21   permission to have Case Agent Milner sit with us at the table.

22            THE COURT:  He can sit at the table.

23            MR. LEWIS:  Thank you, sir.  The other item that the

24   government has is that yesterday I noticed two typos on the

25   government's exhibit list, and I've got an amended exhibit list
```

```
 1   that I've already given over to the defense and wish to go ahead

 2   and present that to the Court at this time.

 3               THE COURT:  Do you have any problem with the amended

 4   list?

 5               MR. BURNS:  No, Your Honor.

 6               THE COURT:  Okay.  We'll take the amended list.

 7               MR. LEWIS:  And, Judge, one other thing.  I apologize.

 8   I have provided the defense a copy of Government Exhibit 1.  It

 9   was my mistake in providing him with the alternative.  He's seen

10   Exhibit 1 so I just switched it out and I would like to provide

11   you a copy with Government Exhibit 1.

12               THE COURT:  Okay.  That's fine.

13               MR. BURNS:  We have no objection to the substitution,

14   Your Honor.

15               MR. LEWIS:  Other than that, Judge, nothing else from

16   the government, sir.

17               MR. BURNS:  Your Honor, the defense has one item, if

18   we could.  The Court instructed us to -- or instructed the

19   defense be given a limiting instruction regarding Mr. Hansen, if

20   you admitted that into evidence.  In addition, Your Honor, I'm

21   just trying to preserve any error I may have.  I have a proposed

22   Government's Exhibit 43 wherein we take out all of Mr. Hansen's

23   name and statement, except at the top.  And, also, Your Honor, a

24   proposed charge.  My computer went down.  This is kind of off

25   the top of my head, but I've heard it a number of times and I
```

VOL. 1A,   8

1  believe it's a sufficient charge, a 404(b) charge, when that

2  comes in, if it does.  And, also, I didn't know whether the

3  Court would admit both the tape and the transcript, so I didn't

4  put it on.

5          THE COURT:  Well, I'm not sure what I'm going to do on

6  that yet.  Let's talk about that a little bit.

7      How are you going to prove that up?  By somebody who

8  participated?

9          MR. LEWIS:  Judge, one of the witnesses that was

10  working -- there's a police officer who was working off duty.

11  He was upstairs monitoring a situation, and it was his job, if

12  anything bad happened, he was to, you know, ensure the safety of

13  the people working during that sting operation.  He viewed

14  everything as it happened in real time and would be able to

15  testify that, in fact, there's been no edits, changes, or

16  anything else to that tape or to the transcript that matches up

17  to that tape.

18          THE COURT:  Okay.

19          MR. LEWIS:  And -- Oh, I'm sorry.

20          THE COURT:  Let me see your proposed instruction.  You

21  have one to use if only the transcript is admitted, and the

22  other to use if both the tape and the transcript?

23          MR. BURNS:  No, Your Honor.  I just left it exhibit

24  number, so you can put in 42 and 43.

25          THE COURT:  Let me see your proposed instruction.

VOL. 1A,  9

```
 1           MR. BURNS:  And then I don't know why -- what the

 2   Court's going to be admitting it for.  And, also, I have a

 3   proposed transcript where we take out everything about

 4   Mr. Hansen.

 5           MR. LEWIS:  Your Honor, I know you haven't had a

 6   chance to review the transcript.  I was just going to hand it to

 7   you, but the government would object to that transcript,

 8   striking every -- and blocking out every word that the

 9   investigative reporter asked that night.  It's not going to give

10   any context to what the defendant is saying.

11           THE COURT:  Mr. Burns, are there particular words that

12   are of concern to you?

13           MR. BURNS:  Yes, Your Honor.  Without --

14           THE COURT:  Let me get the transcript, and you tell me

15   what particular words are of concern to you.  What exhibit

16   number is it?

17           MR. BURNS:  It's 43, Your Honor.

18           THE COURT:  Okay.  I'm looking at 43 now.  Let me pull

19   it out of the sleeve.

20      (Brief pause.)

21           THE COURT:  These sleeves are more trouble than

22   they're worth.  I wish y'all would just put holes on the

23   documents themselves and fit it in the notebook that way.

24           MR. LEWIS:  I'll do that next time, Judge.  I

25   apologize for that.
```

```
 1              THE COURT:  And be sure they have page numbers, as

 2   this does.

 3       Okay.  I'm looking at Exhibit 43, and tell me which words

 4   are causing you a problem.

 5              MR. BURNS:  Your Honor, specifically Mr. Hansen at one

 6   point, and I'm trying to find it, makes a statement that, you

 7   know, everybody that we've hit with this says they're innocent.

 8   On page 12 -- I mean, that's the biggest thing.  I don't want

 9   any of it.  I can't cross-examine it, but virtually every

10   man who ends up in this situation tells me that they're

11   innocent.

12              THE COURT:  Well, I want to deal with all of the parts

13   of it that you consider to be inappropriately inflammatory.

14   Page 12?

15              MR. BURNS:  Yes, Your Honor.  And --

16              THE COURT:  Okay.  Go ahead.  What else?

17              MR. BURNS:  Your Honor, on page 4, as well, "Hansen:

18   The problem is that the State of Texas isn't okay with it.  It's

19   against the law."  And that's just talk about sex.  And I don't

20   think talking --

21              THE COURT:  Well, if we take that out, then we'd have

22   to take out his response.

23              MR. BURNS:  Yes, Your Honor.

24              THE COURT:  And then the next one, "To solicit

25   somebody who is underage," and then his response of, "I wasn't
```

```
 1   aware of that."

 2             MR. BURNS:  Yes, sir.

 3             THE COURT:  And then. . .

 4             MR. BURNS:  And I'm not sure that's even a correct

 5   statement, I don't think.  But soliciting for sexual intercourse

 6   could be considered a criminal offense.

 7             THE COURT:  I'm inclined to think that should come

 8   out, starting with, "The problem is that the State of Texas

 9   isn't okay with it.  It's against the law," down through his

10   second response, "I wasn't aware of that."  In other words, the

11   two statements and the two responses.

12             MR. LEWIS:  On page 4, Your Honor?

13             THE COURT:  Yes.  I think those should be marked out

14   or blocked out or whited out or done something.

15       The first one you mentioned on page 12, let me look at it

16   again.

17       (Brief pause.)

18             THE COURT:  On page 11, starting with, "Do you see why

19   that's hard for me?"  It's the second statement by Hansen from

20   the bottom of the page down through Wolford's response on page

21   12, "Well, I can assure you that's what I've been."  I don't

22   think that needs to be read to the jury for them to understand

23   the purpose of the evidence.

24       Okay.  Does that take care of the ones you have a serious

25   concern with?
```

```
 1            MR. BURNS:  Well, I don't want to waive my Crawford

 2   objection, but, yes, that's the main thing.

 3            THE COURT:  Well, you're not going to waive anything,

 4   but I want to take out the things that you think are

 5   inflammatory.

 6            MR. BURNS:  Those are that, and then the very last

 7   statement that Mr. Hansen makes just on the last page.  It says,

 8   "Well, there's a couple of things you got to know, that I am

 9   Chris Hansen with Dateline NBC, and we're doing a story on

10   adults who try to meet kids online for sex.  Now, if there's

11   anything else you would like to say, Randy, we would like to

12   hear it.  If not," and then it just sort of stops.

13            THE COURT:  Okay.  I don't know that that's essential

14   to the point.  If there is someplace else -- if there is some

15   other evidence that explains why this is happening, I think the

16   jury is entitled to know why it's happening.  Is there some

17   other way that that will be explained?  Will the officer explain

18   that?

19            MR. LEWIS:  The officer will explain in the beginning

20   what they were doing there that night, sir.

21            THE COURT:  Okay.  Well, then, I don't know that what

22   Mr. Hansen says at the end is necessary.  I'm going to order

23   that it be whited out on the assumption that there's another way

24   to explain to the jury why they're doing it.

25        Does that take care of it?
```

```
 1              MR. BURNS:  Yes, sir, other than the general

 2   confrontation.

 3              THE COURT:  You just want to cross-examine him.

 4              MR. BURNS:  Yes, sir.  I think I can possibly get some

 5   good stuff out of him.

 6              THE COURT:  Well, I'm sure he would be a very

 7   receptive witness.

 8              MR. BURNS:  And, Your Honor, there is one other item

 9   that we've talked about, and we've agreed that on page 1 after

10   Murphy, Texas, that --

11              MR. LEWIS:  It's on the top of the page, sir.

12              MR. BURNS:  At the very top of the page.  "And met who

13   he thought was a 13-year-old girl."  We're objecting to that,

14   Your Honor.  That's kind of the whole issue as to whether he

15   thought she was 13 or not.

16              THE COURT:  Well, that obviously is not going to be on

17   the tape.

18              MR. LEWIS:  No, sir.

19              THE COURT:  So that probably ought to be taken out.

20              MR. LEWIS:  I've already agreed, sir, to take out the

21   portion of the sentence that reads, "and met with who he thought

22   was a 13-year-old girl."  If the Court wishes me to take out the

23   entire paragraph?

24              THE COURT:  I don't know of any reason to have any of

25   it in there as long as the officer can explain what was going on
```

1   and where it was happening.

2           MR. LEWIS:  Not a problem, sir.

3           THE COURT:  And this instruction you want me to give,

4   do you want me to give it at the time the tape is played?

5           MR. BURNS:  Yes, Your Honor, assuming that the Court

6   lets in the tape or the transcript, either one.

7           THE COURT:  I assume there's no question as to the

8   accuracy of the transcript, is there?

9           MR. BURNS:  We've gone through it and agreed on the

10  accuracy of the wording.

11          THE COURT:  Okay.  Well, it's not being submitted to

12  the jury just to help them.  It's going to be primary evidence

13  of what it says.

14          MR. BURNS:  Well, this is the extraneous offense.

15          THE COURT:  I know, but it's going to be evidence of

16  that extraneous offense.  So I'm not going to give the

17  instruction that it's just here to help them.  The transcript is

18  evidence of what was said, just as any other transcript is, the

19  way I handle recordings.  But in this case they're going to play

20  it.  Plus, they're also going to have the transcript as

21  evidence.  And as I understand it, there's been agreement that

22  the transcript is accurate.

23          MR. BURNS:  Yes, Your Honor.  And the problem is, of

24  course, if you play the tape, then the parts that are being

25  taken out are going to be played before the jury.

```
 1            THE COURT:  Well, you're going to have to handle that

 2   somehow.  You're going to have to take that out of the tape.

 3            MR. LEWIS:  I understand, Judge, and if I can make

 4   that happen, I will.  And if not --

 5            THE COURT:  Well, why don't we just not play the tape.

 6   We'll just do the transcript.

 7            MR. LEWIS:  I understand, sir.

 8            THE COURT:  Okay.

 9            MR. BURNS:  I don't want to mislead the Court.  What

10   I'm asking for, Your Honor, is that at the time that this comes

11   in, that we get the standard 404(b) instruction that we're

12   entitled to as to why that's being admitted before the jury.

13            THE COURT:  In other words, you want me to give the

14   instruction that's in the charge, in the Court's charge, that

15   y'all have agreed on?

16            MR. BURNS:  No, Your Honor.  There's a different one.

17   In a 404(b), the Court tells the jury why that particular

18   evidence --

19            THE COURT:  You have heard evidence of acts of the

20   defendant which may be similar to those charges in the

21   indictment.  Is that what you want me to tell them?

22            MR. BURNS:  Yes, Your Honor.

23            THE COURT:  That's what I meant, the same one we've

24   got in the charge.  Look at your agreed charge on page 12, top

25   of page 12.  You want me to give the charge that's on that page.
```

```
 1              MR. BURNS:  Yes, Your Honor, except --

 2              THE COURT:  Going through the two lines at the top of

 3     page 13.

 4              MR. BURNS:  Yes, Your Honor.  Except I'm asking the

 5     Court to tell the jury what that very limited purpose is.

 6              THE COURT:  Well, that's what it goes on to say, the

 7     bottom half of page 12.  Those are the limited purposes.  Is

 8     that what you want me to tell the jury when the tape is entered

 9     into evidence?  Not the tape, the transcript entered into

10     evidence?

11              MR. BURNS:  Yes, Your Honor.

12              THE COURT:  Okay.  Is there anything else we need to

13     deal with?

14              MR. LEWIS:  Not from the government, sir.

15              MR. BURNS:  No, Your Honor.  I'm assuming that the

16     Court is not going to omit all the statements -- all the

17     statements of Hansen.

18              THE COURT:  Well, I've already indicated what I plan

19     to do.  Here's your copy back of the version with all the

20     statements marked through.

21          Okay.  Is there anything else we need to deal with before

22     we get the jury in the courtroom?

23              MR. LEWIS:  Judge, I will attempt to have those

24     portions of the videotape edited out, but if not, the government

25     won't offer them.  We'll just offer the transcript, sir.
```

1            THE COURT:  Well, that's all we're going to offer, is

2    the transcript.  We've already made that decision.

3            MR. LEWIS:  Oh, yes, sir.  Sorry, sir.  Thank you.

4            THE COURT:  But white out the places in the transcript

5    instead of blacking them out.

6            MR. LEWIS:  Yes, sir.

7            THE COURT:  And I think I've already informed you that

8    I'm not going to permit use of the photographs involving the

9    infants.

10           MR. LEWIS:  I know that during the conference call on

11   Friday, the Court did mention that, sir, and just for

12   clarification, Your Honor, I believe the Court is talking about

13   Exhibits 39 and -- 39; is that correct?

14           THE COURT:  Let me get the numbers.

15      (Brief pause.)

16           THE COURT:  I've got 39 and 40.

17           MR. LEWIS:  Thirty-nine and 40, sir, yes, sir.

18           THE COURT:  As I understand it, those are things that

19   were found in his computer?

20           MR. LEWIS:  That's correct, sir.

21           THE COURT:  I don't know that they add anything to

22   this particular case.

23           MR. LEWIS:  Yes, Your Honor.  And I will not ask about

24   Exhibit 39 and 40, Your Honor.

25           THE COURT:  Okay.

```
 1              MR. BURNS:  Your Honor, while we're addressing that,

 2   the government's exhibits include young children, infants -- or

 3   not infants necessarily, little bitty kids on Exhibit 37, 38,

 4   39, 40, and 41, Your Honor.  And, again, these are small

 5   children, and this is extraneous collateral.  Any probative

 6   value it may have is fairly outweighed by the --

 7              THE COURT:  What numbers did you just call off?

 8              MR. BURNS:  Thirty-seven through 41, I believe it is.

 9   Let me make sure.  Yes, 37 through 41.

10              MR. LEWIS:  Government has agreed not to get into the

11   aspects of 39 and 40, Judge.

12              THE COURT:  I don't see 41.  Well, I found 41.  That

13   is not a photograph that was taken -- I really can't tell what

14   it is.  Oh, it's a child.  Okay.

15              MR. BURNS:  Yes, sir.

16              THE COURT:  I don't see any reason to use any of those

17   in this case:  37, 38, 39, 40, and 41.  Don't use any of those

18   unless something happens during the trial that they become

19   relevant.

20              MR. LEWIS:  Yes, sir.

21              THE COURT:  And I'm not saying they're not relevant.

22   They are relevant.  My concern is that it would be -- the

23   prejudice would outweigh the probative value of those.

24              MR. LEWIS:  Judge, I will approach the bench before I

25   attempt to try to talk about those items, sir.
```

1          THE COURT:  Okay.  Now, let's address another concern

2     I had, and that was whether there's any need to display any of

3     the photographs to the jury as opposed to having somebody

4     describe them.  Do you think anything is really gained by

5     showing any of those photographs to the jury, Mr. Lewis?

6          MR. LEWIS:  Judge, I do plan on entering into evidence

7     and showing the jury -- well, not showing them, not publishing

8     it to the jury, but having it available for them during the

9     deliberation.  I believe the Court is referring to Government's

10    Exhibits 10 --

11         THE COURT:  What do you think the jury gains from

12    seeing those photographs as opposed to hearing a word

13    description of what they show?

14         MR. LEWIS:  I understand the Court's question.  I

15    apologize, sir.  Judge, a picture is worth a thousand words.

16    And since this individual, Mr. Wolford, was trying to entice a

17    13 -- or who he believed to be a 13-year-old --

18         THE COURT:  Well, can't somebody describe what the

19    photographs show?

20         MR. LEWIS:  They can, sir.  But it's the government's

21    position that that won't do it justice.

22         THE COURT:  Okay.  Well, I indicated over the phone

23    Friday that if the government felt a genuine need for the jury

24    to see those that I'd let the government offer them into

25    evidence.  So that's the way we'll leave that.

1      Okay.  We'll get the jury panel in, and y'all can move your

2    chairs on this side of the table.

3           MR. LEWIS:  Yes, Your Honor.

4      (Court in recess, 9:31 a.m. until 9:50 a.m.)

5           THE COURT:  Good morning.  My name is John McBryde.

6    I'm one of the district judges here.  We're here this morning to

7    select a jury to participate in the trial of a criminal case.

8    It's a case that's going to trial on the basis of an indictment

9    returned by the grand jury.  The indictment is not evidence of

10   anything.  That's simply a way that a case such as this goes to

11   trial.  But I am, in a few minutes, going to tell you what the

12   indictment charges because that will help you participate in

13   this proceeding, to know what the case is about.

14     This is what we refer to as a voir dire examination of a

15   jury panel.  It has two purposes.  You've already been

16   determined to be qualified to serve as a juror in the federal

17   court.  One of the purposes of what we're doing now is to

18   determine if there is a reason why you should not serve on the

19   jury in this particular case because of something in your

20   background, some knowledge you have, such as perhaps knowing

21   somebody involved in the litigation in the case.

22     The other purpose is to acquire some additional information

23   about you.  Each side has the right, somewhat arbitrarily, to

24   strike from the list with your names on it a certain number of

25   names.  That's what we call peremptory challenges.  So we want

1  to give the lawyers a little more information than they now have

2  in order to more intelligently exercise those challenges.  So

3  we'll be asking some questions.

4      With the possible exception of one or two questions, I

5  don't think any question will be asked that would cause you to

6  hesitate to answer the question in the hearing of everybody in

7  the courtroom.  In other words, nothing would be asked that

8  would cause you to give an answer that you'd be embarrassed to

9  give publicly with a possible exception of one or two questions.

10 And when we get there, to that question or questions, I'll tell

11 you we're there.  And when the question is asked, if you have a

12 response to it and you would prefer to come up here with the

13 microphone turned off and tell me what the response is, of

14 course, an attorney for each side would also have to be up here,

15 I'll permit that.  Unless it's something that would be unduly

16 embarrassing, of course, it would be better if you went ahead

17 and answered it from out there.

18     Since we will be asking questions, the law contemplates

19 that you will be under oath when you answer these questions, so

20 at this time I'm going to ask all of you to stand and raise your

21 right hands to accept an oath to participate in this proceeding.

22     (The jury panel is sworn.)

23         THE COURT:  Okay.  Be seated.

24     This case is being brought to trial on the basis of an

25 indictment charging that the defendant committed a federal

1   crime.  The number of the case is 4:08-CR-165-A.  It's United

2   States of America versus Randall Wolford, W-O-L-F-O-R-D.  That's

3   the name of the defendant.  In a very general way -- And bear in

4   mind what I've already said.  The indictment is not evidence.

5   This is simply an accusation made by the government against the

6   defendant, and the government has the burden to prove their

7   accusation beyond a reasonable doubt.

8        But the government alleges that between March 18, 2008, and

9   May 1, 2008, here in the Fort Worth Division, the defendant,

10  Randall Wolford, used a facility or means of interstate

11  commerce, that is, the Internet, which is a means of interstate

12  commerce, to attempt to persuade and induce and entice a person

13  he believed to be 13 years of age to engage in sexual activity.

14  And the indictment alleges that that activity he was seeking to

15  -- that he was enticing that person he thought to be 18 (sic)

16  years of age to engage in would be a criminal act -- or criminal

17  conduct under the laws of the State of Texas.  And I'm not going

18  to go into what that Texas law is now.  It's sufficient to say

19  that the government is alleging what he was attempting to do,

20  what the defendant was attempting to do over the Internet, was

21  to entice a person he believed to be 13 years of age to engage

22  in activity that would be a crime on his part, if he engaged in

23  it, in the State of Texas.

24       And let me add that the evidence is going to show -- I

25  anticipate that the government is going to attempt to show their

1  theory of the case is, the government's theory of the case is,

2  that an undercover law enforcement person was pretending to be a

3  person under 13 years of age, pretending be a girl under 13

4  years of age, and was engaging in the Internet communications

5  with the defendant to cause him to go to a certain place and

6  that he was arrested when he did that.  I think that will be the

7  government's contention in the case.

8      First of all, is there anyone on the jury panel who has any

9  knowledge of the defendant, Mr. Wolford?  If so, raise your

10  hand.

11      (No response.)

12      THE COURT:  I don't see any hands on that.

13      Okay.  Is there anyone who has any knowledge about this

14  case, by any chance?  If so, raise your hand.

15      (No response.)

16      THE COURT:  I don't see any hands on that.

17      Okay.  I'm going to have the government attorney, lead

18  attorney, introduce himself and his co-counsel and the case

19  agent at this time.

20      MR. LEWIS:  Thank you, Your Honor.  My name is Alex

21  Lewis.  Together with me is Aisha Saleem, co-counsel in the

22  case, and the case agent, Sergeant Tom Milner.

23      THE COURT:  Is there anyone on the jury panel -- You

24  can sit down.

25      Is there anyone on the jury panel who knows Mr. Lewis or

```
 1  Ms. Saleem or Mr. Miller?  Any of you have any knowledge
 2  whatsoever of any of those persons?  If so, raise your hand.
 3  It's Milner, not Miller.
 4          MR. LEWIS:  That's correct, sir.
 5      (No response.)
 6          THE COURT:  Okay.  I don't see any hands on that.
 7      Now, Mr. Lewis and Ms. Saleem are Assistant United States
 8  Attorneys in the Office of the United States Attorney for the
 9  Northern District of Texas.  Is there anyone on the jury panel
10  who personally or through a family member or a close friend has
11  ever had any connection with the Office of the United States
12  Attorney?  If so, raise your hand.
13      (No response.)
14          THE COURT:  I don't see any hands on that.
15      Mr. Milner is a police officer with the Sansom Park Police
16  Department.  Is there anyone on the jury panel who has any
17  connection with the Samson Park Police Department?  If so, raise
18  your hand, either personally or through a family member or a
19  close friend.  If so, raise your hand.
20      (No response.)
21          THE COURT:  I don't see any hands on that.
22      Okay.  Mr. Lewis, identify each of the witnesses the
23  government plans to call and give just a very brief description
24  of who they work for, something about them to help the jury
25  identify the person if the jury happens to know the person.
```

```
 1            MR. LEWIS:  Yes, sir.  Kyle Gibson, a computer
 2   forensic expert, working with the Tarrant County Sheriff's
 3   Department.  Lauren Pitts, now working as a dispatch person for
 4   the North Richland Hills Police Department, but during the time
 5   of the offense worked at the Samson Park Police Department.  Jim
 6   Patterson, now working with the Dallas County Constable's
 7   Office.  And Sergeant Snow Robertson, working with the Murphy,
 8   Texas, Police Department.
 9            THE COURT:  Okay.  You can be seated.  Is there anyone
10   on the jury panel who knows anything about, has any knowledge
11   of, any of the persons who have been identified as prospective
12   witnesses for the government?  If so, raise your hand.
13        (No response.)
14            THE COURT:  I don't see any hands on that.
15        At this time I'll ask the attorney for the defendant to
16   stand and identify himself -- the lead attorney, identify
17   himself, his co-counsel, and his client.
18            MR. BURNS:  Thank you, Your Honor.  My name is Danny
19   Burns.  Ladies and gentlemen, I have an office here in Fort
20   Worth.  I am assisted on this case by Ms. Randall Bowers -- or
21   Randy Bowers, and she also has an office here in Fort Worth,
22   Texas.
23            THE COURT:  And you want to introduce your client?
24            MR. BURNS:  And this is Mr. Randall Wolford.  He works
25   in the oil fields -- in the oil field business usually.
```

```
 1              THE COURT:  You can sit down.

 2       Does anybody on the jury panel have any knowledge

 3   whatsoever of Mr. Burns, Ms. Bowers, or Mr. Wolford?  I think

 4   I've asked about Mr. Wolford before.  I'll ask again:  Does

 5   anyone on the jury panel have any knowledge of any of those

 6   persons?  If so, raise your hand.

 7       (Venireperson No. 37 raises hand.)

 8              THE COURT:  Okay.  That's Mr. Oloughlin.

 9              VENIREPERSON OLOUGHLIN:  Yes, Your Honor.  I know

10   Ms. Bowers, just on a personal level, so I don't know if that

11   makes any difference or not.

12              THE COURT:  What is the nature of your

13   acquaintanceship with her?

14              VENIREPERSON OLOUGHLIN:  Personal level.  I've known

15   her for several years.  Just through friends and, you know.

16              THE COURT:  Have y'all been at social events together

17   and that sort of thing?

18              VENIREPERSON OLOUGHLIN:  Yes, yes.

19              THE COURT:  And how long has that relationship

20   existed?

21              VENIREPERSON OLOUGHLIN:  Oh, five years, ten years.

22   Five or ten years, something like that.

23              THE COURT:  Okay.  Is there anything about that

24   relationship that would cause you any embarrassment if you had

25   to render a verdict against her client?
```

```
 1              VENIREPERSON OLOUGHLIN:  (Pause.)

 2              THE COURT:  Would it create --

 3              VENIREPERSON OLOUGHLIN:  Well, no, I don't think so,

 4    but there is the --

 5              THE COURT:  Why don't you come up here a minute, and

 6    let me ask you some more questions up here.

 7              VENIREPERSON OLOUGHLIN:  Thank you.

 8              THE COURT:  Why don't one of the attorneys for each

 9    side come up here.

10              MR. BURNS:  Your Honor, do I understand it's Ms.

11    Bowers and myself?

12              THE COURT:  One attorney for each side, and y'all pick

13    whichever one it is.  He may want to say something about

14    Ms. Bowers, so why don't you come up here, Mr. Burns.

15              MR. BURNS:  Never mind.  We'll switch out.

16         (Ms. Bowers and Venireperson Oloughlin confer out of the

17          hearing of the Court.)

18              THE COURT:  I think Ms. Bowers is carrying on a

19    personal communication now with the juror, so he's excused as a

20    juror.  He's excused from the panel.

21         You're excused from the panel.

22         That was highly inappropriate, Ms. Bowers.

23              VENIREPERSON OLOUGHLIN:  I'm sorry.

24              THE COURT:  You're excused from the panel.  You can

25    leave the courtroom.
```

```
 1        Is there anyone else on the jury panel who has any

 2   knowledge whatsoever -- You're excused from the panel.  You can

 3   leave the courtroom.

 4             VENIREPERSON OLOUGHLIN:  All right.  Thank you, Judge.

 5             THE COURT:  You will have to call that Code-A-Phone

 6   number at the time you're supposed to call it.  I don't recall

 7   what time it is, the number that you have to call --

 8             VENIREPERSON OLOUGHLIN:  Yes, Your Honor.

 9             THE COURT:  -- you'll have to continue to call that

10   number.

11             VENIREPERSON OLOUGHLIN:  Yes, sir.

12             THE COURT:  Okay.

13             VENIREPERSON OLOUGHLIN:  Thank you.

14        (Mr. Oloughlin leaves courtroom.)

15             THE COURT:  Is there anyone else on the jury panel who

16   has any knowledge whatsoever of either of the attorneys for the

17   defendant, Danny Burns or Randy Bowers, or the defendant

18   himself?  If so, raise your hand.

19        (No response.)

20             THE COURT:  Okay.  I don't see any hands on that.

21        Okay.  Identify, if you would, Mr. Burns, the witnesses

22   that the government has already identified, the name of the

23   witness or witnesses your client might call.

24             MR. BURNS:  Thank you.  In addition to the

25   government's witnesses, we anticipate we will call Ms. D'Ann
```

```
 1   Steadham.

 2           THE COURT:  Where does she live?

 3           MR. BURNS:  She lives in Houston, Texas, Your Honor.

 4   She is a procurement agent --

 5           THE COURT:  Okay.

 6           MR. BURNS:  -- for Weatherford International.

 7           THE COURT:  Okay.  Anybody else?

 8           MR. BURNS:  Possibly Mr. Wolford, Your Honor.

 9           THE COURT:  Okay.  Is there anyone on the jury panel

10   who has any knowledge whatsoever of D'Ann Steadham?

11       You can sit down.

12           MR. BURNS:  Yes, sir.

13           THE COURT:  If so, raise your hand.

14       (No response.)

15           THE COURT:  I don't see any hands on that.

16       Now, the next question I'm going to ask, we have a number

17   of jurors normally who raise their hands, so I'm going to take

18   it a row at a time.  The question is:  Have you or any member of

19   your family or any close friend ever been employed by a law

20   enforcement agency?  And like I say, we normally have a number

21   of people who have "yes" answers to that question, so I'm going

22   to ask the question again and have everyone on the first row who

23   has a "yes" answer to the question to raise your hand.

24       (Several hands raised.)

25           THE COURT:  This is directed to everybody on the first
```

```
 1   row:  Have you or any member of your family or any close friend

 2   ever been employed by a law enforcement agency?

 3        (Several hands raised.)

 4            THE COURT:  Okay.  Ms. Sheen has raised her hand.

 5   Mr. Lemley.  Anyone else?  Ms. Allen and Ms. Green.  Does anyone

 6   else on the first row have a "yes" answer to the question asking

 7   about employment by a law enforcement agency?  That is, either

 8   you or any member of your family or any close friend.  If anyone

 9   has a "yes" answer on the first row who hasn't already raised

10   your hand and been identified, raise your hand now.

11        (No response.)

12            THE COURT:  Okay.  I don't see any further hands on

13   the first row.

14        Okay.  Let's go to the second row.  Is there anyone on the

15   second row who has a "yes" answer to the question asking if you

16   or any member of your family or any close friend has ever been

17   employed by a law enforcement agency?  Anyone on the second row

18   have a "yes" answer to that question?

19        (Several hands raised.)

20            THE COURT:  Okay.  Ms. Hale, Ms. Allmon.

21            VENIREPERSON ALLMON:  Yes.

22            THE COURT:  Ms. Hunt, Ms. Russell, Mr. Garza,

23   Ms. Hall, and Ms. -- Is it Giorandino?

24            VENIREPERSON GIORANDINO:  Giorandino.

25            THE COURT:  Okay.  I'll try to remember how to
```

 1   pronounce that.

 2        Okay.  Have I called the name of everyone on the second row

 3   who has a "yes" answer to the question asking have you or any

 4   member of your family or any close friend ever been employed by

 5   a law enforcement agency?  If I've overlooked anyone, raise your

 6   hand now.

 7        (No response.)

 8             THE COURT:  I don't see any further hands.

 9        Okay.  I'm going to the third row now.  Is there anyone on

10   the third row who has a "yes" answer to the question asking

11   whether you, any member of your family, or any close friend has

12   even been employed by a law enforcement agency?  If so, raise

13   your hand.

14        (Several hands raised.)

15             THE COURT:  Okay.  That's Ms. Gonzalez, Mr. Miller,

16   Ms. Roden, Mr. Costello, Ms. Atchley, Mr. Gilchrist,

17   Mr. Borrego, and Ms. Taylor.

18        Is there anyone else on the third row who has a "yes"

19   answer to the question asking about employment by a law

20   enforcement agency?  If so, raise your hand now, if I've

21   overlooked anyone.

22        (No response.)

23             THE COURT:  Okay.  Anyone on the back row have a "yes"

24   answer to the question asking about employment by a law

25   enforcement agency?

```
 1          (Venireperson Nos. 38 and 40 raise hands.)

 2          THE COURT:  Ms. Dancer and Ms. Reyes.

 3      Okay.  I'm going to go back now and ask each of you who

 4  raised your hand in reference to the question about employment

 5  by a law enforcement agency to stand and tell me why you raised

 6  your hand.

 7      Mr. Lemley.

 8          VENIREPERSON LEMLEY:  Yes, Your Honor.  My former

 9  father-in-law, who is now deceased, was a U.S. Deputy Marshal.

10  And my stepfather-in-law is a retired highway patrolman from

11  Oklahoma.

12          THE COURT:  Okay.  Thank you.

13      Ms. Hale.

14          VENIREPERSON HALE:  My cousin is a retired state

15  police officer in Connecticut, and my brother-in-law was a

16  lawyer with the Combined Law Enforcement Agency of Texas.

17          THE COURT:  Okay.  Thank you.  Hand it down next to

18  you.

19      Ms. Giorandino.

20          VENIREPERSON GIORANDINO:  My cousin is a police

21  officer in New York.  My brother-in-law is an attorney.

22          THE COURT:  Okay.  Thank you.  Hand it to Mr. Johnson.

23  He's next to you.

24          VENIREPERSON JOHNSON:  I didn't raise my hand.

25          THE COURT:  Oh, I'm sorry.  I had Mr. Johnson down.
```

```
 1              VENIREPERSON ALLMON:  I'm not sure about this one.  I

 2   think it was my nephew's wife worked at a county jail, but I

 3   don't know if she was in law enforcement or not.  I couldn't

 4   remember, so I thought I'd better raise my hand.

 5              THE COURT:  Okay.  Well, thank you.  Hand it back to

 6   Ms. Gonzalez.

 7              VENIREPERSON GONZALEZ:  Yes.  I've got a good friend

 8   that has worked --

 9              THE COURT:  I can't -- You're very soft-spoken.  I

10   think maybe the microphone went out on you.

11              VENIREPERSON GONZALEZ:  Yeah.  I've got a good friend

12   of 25 years, that he works for the Department of Homeland

13   Security.

14              THE COURT:  Okay.  Thank you.

15        And then Mr. Miller.

16              VENIREPERSON MILLER:  I have two great uncles that are

17   retired highway patrolmen.

18              THE COURT:  Okay.  Thank you.

19        Ms. Roden.

20              VENIREPERSON RODEN:  My cousin works for dispatch in

21   the Sheriff's Department.

22              THE COURT:  Okay.

23        Back to Ms. Dancer.

24              VENIREPERSON DANCER:  My nephew is a police officer in

25   the City of Kennedale.
```

1              THE COURT:  Thank you.

2        And then Ms. -- Do you go by Lopez-Reyes?

3              VENIREPERSON LOPEZ-REYES:  Yes.

4              THE COURT:  Okay.  Ms. Lopez-Reyes.

5              VENIREPERSON LOPEZ-REYES:  My brother is a U.S.

6    customs border patrol.

7              THE COURT:  Let's try it over again.  That microphone

8    is new and we're --

9              VENIREPERSON LOPEZ-REYES:  My brother works for U.S.

10   Customs.  He's an officer.

11             THE COURT:  Okay.  Thank you.

12        Okay.  And let's go over to Mr. Costello.

13             VENIREPERSON COSTELLO:  I have several friends that

14   are investigators for the district court, and a good friend of

15   mine is currently chief of police for Mansfield School District.

16             THE COURT:  Okay.  Thank you.

17        Let's go up to Ms. Hunt.

18             VENIREPERSON HUNT:  I work for the U.S. Postal

19   Inspection Service for 26 years, the Inspector In Charge's

20   secretary.  I'm a personal and good friend of all of the postal

21   inspectors there, and I was married to one for 20 years.

22             THE COURT:  Okay.  Thank you.

23        Okay.  Ms. Russell.

24             VENIREPERSON RUSSELL:  I have two cousins.  One is a

25   police officer and one is a constable.

```
 1                THE COURT:  Okay.  Thank you.

 2        And then Mr. Garza.

 3                VENIREPERSON GARZA:  My ex-brother-in-law used to be

 4   with the police department of Mineral Wells.

 5                THE COURT:  Okay.  Thank you.  Hand it back to

 6   Ms. Atchley.

 7                VENIREPERSON ATCHLEY:  My brother was a police officer

 8   in Fort Worth.  He's retired.

 9                THE COURT:  Thank you.

10        And then Mr. Gilchrist.

11                VENIREPERSON GILCHRIST:  My cousin is an Oklahoma City

12   police officer, and I have -- a good friend of mine is the

13   ex-chief of police for Weatherford.  He's now the city manager,

14   and I have a lot of friends in law enforcement.

15                THE COURT:  Okay.  Thank you.

16        Okay.  Mr. Borrego.  He's at the end there.

17                VENIREPERSON BORREGO:  My cousin is the current

18   assistant chief in El Paso, Texas, and I served on the Citizens

19   Police Academy in Oklahoma City.

20                THE COURT:  Okay.  Thank you.

21        And Ms. Taylor.

22                VENIREPERSON TAYLOR:  My boss's daughter-in-law that

23   worked for me is now employed with the Tarrant County Sheriff's

24   Department Crime Scene.

25                THE COURT:  Okay.  Thank you.
```

```
 1        Let's see, Jan Hall?

 2             VENIREPERSON HALL:  Yes, sir.  My neighbor, we're not

 3   that close, but he works for the Sheriff's Department and just

 4   several acquaintances through where I work with the Westworth

 5   Police Department.

 6             THE COURT:  Okay.  Thank you.

 7        Okay.  Ms. Green, Gretchen Green.

 8             VENIREPERSON GREEN:  My brother-in-law is a border

 9   patrol agent.

10             THE COURT:  Okay.  Thank you.

11        Shirley Allen.

12             VENIREPERSON ALLEN:  My nephew used to manage the jail

13   at Eastland, Texas.

14             THE COURT:  Okay.  Thank you.

15        And then Ms. Sheen.

16             VENIREPERSON SHEEN:  I have a cousin who is a retired

17   policeman, and my nephew is currently a criminal investigator

18   for the U.S. government.

19             THE COURT:  Okay.  Thank you.

20        I believe I've called on everyone who raised your hand in

21   response to the question asking about employment by a law

22   enforcement agency.  The question was:  Have you or any member

23   of your family or any close friend ever been employed by a law

24   enforcement agency?

25        Did I miss anyone?  If I failed to call on anyone who has a
```

1    "yes" answer to that question, raise your hand now.

2         (No response.)

3              THE COURT:  Okay.  I don't see any more hands.

4         Okay.  The next question is the one I indicated some of you

5    might want to come up here and give the answer with the

6    microphone turned off.  Unless it's something that would

7    embarrass you, it would be better if you just went ahead and did

8    it out there.  But I understand that sometimes this question can

9    cause you to give an answer that legitimately would make you

10   want to come up here.

11        Has any member of the panel at any time been involved in a

12   criminal matter that concerns yourself, any member of your

13   family, or any close friend, either as a defendant, a witness,

14   or a victim?  And I might add that that includes any kind of

15   criminal matter that would be of a sexual nature, such as being

16   a victim of a sex offense, or somehow or other being a witness

17   or otherwise involved in that kind of offense.

18        But the question is broader than that.  It asks has any

19   member of the panel at any time ever been involved in any

20   criminal matter of any kind that concerns yourself, any member

21   of your family, or a close friend, either as a defendant, a

22   witness, or a victim?  And I'm going to ask those who have a

23   "yes" answer to the question, hold your hands up and then I'll

24   identify you and then after I've done that, I'm going to go

25   back, as I did the last time, and ask each person who held up

1  your hand to tell me why you held up your hand.  And at that

2  point in time, if you want to come up here to give the answer

3  out of the hearing of the others, indicate it and I'll permit

4  you to do that.

5      So I'll ask generally, and this applies to all of the rows.

6  I'm not doing this row by row.  Has any member of the panel at

7  any time been involved in any criminal matter that concerns

8  yourself, any member of your family, or a close friend, either

9  as a defendant, a witness, or a victim?

10     Now, is there anyone who has a "yes" answer to that

11  question.  We'll first find that out.

12     (Several hands raised.)

13         THE COURT:  That's Ms. Sheen, Ms. Murray, Ms. Askins,

14  Ms. Allen, Ms. Giorandino.  I'm sorry.  I'm having a hard time

15  with that.

16     You can put your hands down once I call your name.  Once I

17  call your name, you can put your hand down.

18     Ms. Hunt, Mr. Garza, Mr. Almanza, Ms. -- Let's see, is it

19  Blankemeyer?

20         VENIREPERSON BLANKEMEYER:  Uh-huh.

21         THE COURT:  Ms. Hall, and Mr. Newton?  Am I seeing

22  right?

23         VENIREPERSON NEWTON:  (Raises hand.)

24         THE COURT:  Okay.  And then Ms. Roden, Mr. Perry,

25  Mr. Costello.

1        Okay.  Have I identified everyone who has a "yes" answer to

2   the question asking has any member of the panel at any time been

3   involved in a criminal matter that concerns yourself, any member

4   of your family, or a close friend, either as a defendant, a

5   witness, or a victim?  If I've overlooked anyone, raise your

6   hand at this time.

7        (No response.)

8        THE COURT:  Okay.  I don't see any further hands, so

9   I'm going to go back and ask each of you who raised your hand to

10  stand and tell me why you did.

11       Ms. Murray.

12       VENIREPERSON MURRAY:  I had a man expose himself in

13  our backyard to myself and some children, and the police were

14  called in and we -- there was never a trial or anything because

15  we could never find him, but I was brought in to give a

16  statement and all of that.  So that's it.

17       THE COURT:  Okay.  Thank you.

18       Ms. Giorandino.

19       VENIREPERSON GIORANDINO:  My brother is currently

20  incarcerated, and can I approach?

21       THE COURT:  You want to come up here?

22       VENIREPERSON GIORANDINO:  Yes.

23       THE COURT:  Okay.  That's fine.

24       (Bench conference with lead attorneys and Venireperson

25        Giorandino:)

1              THE COURT:  Come on up here, all the way up here.

2    You've got to get closer.

3              VENIREPERSON GIORANDINO:  My brother is currently

4    incarcerated --

5              THE COURT:  Wait just a second.

6              VENIREPERSON GIORANDINO:  My brother is incarcerated

7    currently.

8              THE COURT:  What is it for?

9              VENIREPERSON GIORANDINO:  Sexual misconduct against a

10   child.

11             THE COURT:  With a child?

12             VENIREPERSON GIORANDINO:  Uh-huh.

13             THE COURT:  Okay.  Is that something that happened

14   recently?

15             VENIREPERSON GIORANDINO:  He's been in for three

16   years.  He's got four more to go.

17             THE COURT:  And what kind -- Is it in the state court

18   or the federal court?

19             VENIREPERSON GIORANDINO:  I think it's state.

20             THE COURT:  Okay.

21             VENIREPERSON GIORANDINO:  It's in New York.

22             THE COURT:  Do you know what age child was involved?

23             VENIREPERSON GIORANDINO:  She was 12, I believe, at

24   the time.

25             THE COURT:  Okay.  You've heard the way we've

1  described this.  Is there any similarity?  Of course, I assume

2  that child was actually a 12-year-old child where here the

3  person was a make-believe 13-year-old girl.

4             VENIREPERSON GIORANDINO:  Right.  It's his

5  stepdaughter, my brother's stepdaughter, my niece.

6             THE COURT:  Okay.  Is there anything about that

7  experience that would cause you to feel like you might not be

8  able to be fair and impartial to both sides in this case?

9             VENIREPERSON GIORANDINO:  I'm not sure.  It's hard to

10 tell.

11            THE COURT:  Do you have some uncertainty about that?

12            VENIREPERSON GIORANDINO:  I'm sorry?

13            THE COURT:  Are you uncertain as to whether you could

14 be fair and impartial?

15            VENIREPERSON GIORANDINO:  I could be, yeah.  I mean,

16 because I don't believe my brother should be where he is because

17 I don't believe the accusations.

18            THE COURT:  Do you feel like he was unfairly treated?

19            VENIREPERSON GIORANDINO:  Oh, absolutely, Your Honor.

20            THE COURT:  Okay.  What we're trying to do is get

21 jurors who can listen to the evidence in this case and see the

22 exhibits and decide the case strictly on the basis of those

23 things without being influenced by prior experiences.  Do you

24 think you can do that?

25            VENIREPERSON GIORANDINO:  I think so.

```
 1            THE COURT:  Okay.  That's good.  If you say you can,
 2  I'm sure you can.  Okay.  You can go back and be seated.  Thank
 3  you.
 4            VENIREPERSON GIORANDINO:  Thank you.
 5       (End of bench conference.)
 6            THE COURT:  Okay.  Cindy Roden.
 7            VENIREPERSON RODEN:  Yes.  My best friend, her brother
 8  was murdered about seven years ago, and I was with her at the
 9  trial, you know, with the family.
10            THE COURT:  Okay.  Thank you.
11       Mr. Perry.
12            THE COURT SECURITY OFFICER:  Judge, we have a late one
13  on this back row.
14            VENIREPERSON CRESPO:  I didn't raise my hand before,
15  Your Honor.
16            THE COURT:  That's Ms. Crespo?
17            VENIREPERSON CRESPO:  Yes.
18            THE COURT:  Okay.
19            VENIREPERSON CRESPO:  It was not -- I was not involved
20  in a case, but when I was 18 years old I was walking to college,
21  to the bus, to go to college, and a guy almost raped me.  And I
22  fought with him, and he didn't have a weapon so he couldn't do
23  anything.  And he got scared because I started screaming, and
24  two guys came to my rescue and we went to the police and I made
25  a report and they showed me his picture.  He had raped a
```

1   19-year-old girl the week before on that alley.  So that's as

2   far as it went.

3          THE COURT:  Okay.  Thank you.

4      Okay.  Mr. Perry.  Was somebody else there?  That's

5   Mr. Miller?

6          VENIREPERSON MILLER:  Yes.  I apologize.  I

7   misunderstood what you were asking there in the question.  My

8   stepsister, her mother and stepfather were murdered, and we, as

9   a family, went through that trial.  And it's been 25 years ago.

10          THE COURT:  Okay.  Thank you.

11      Mr. Perry.

12          VENIREPERSON PERRY:  I was a character witness for one

13   of my soldiers, probably about 10 or 15 years ago.

14          THE COURT:  What kind of trial was it?

15          VENIREPERSON GARZA:  It was a -- he was accused of

16   robbery, and I had to go down to Alabama.  At that time I lived

17   in North Carolina.

18          THE COURT:  Okay.  Thank you.

19      Mr. Costello, right next to you.

20          VENIREPERSON COSTELLO:  Your Honor, could I approach

21   the bench, please?

22          THE COURT:  Yes.

23      (Bench conference with lead attorneys and Venireperson

24       Costello:)

25          THE COURT:  Hi.  Wait until they get up here.

```
 1              VENIREPERSON COSTELLO:  Okay.

 2              THE COURT:  They've got to hear what you say.

 3              VENIREPERSON COSTELLO:  My daughter, a little over a

 4  year ago, was arrested in interfering with evidence.  And my

 5  wife was arrested at the same time for interfering with the

 6  arrest of my daughter.  Now, the case was dismissed in court, so

 7  just so you know that.

 8              THE COURT:  Can you give me a little bit of --

 9              VENIREPERSON COSTELLO:  The evidence was my daughter

10  had been living with a young man.  He beat her up, and for -- I

11  don't know all the details -- that the police in Crowley, Texas,

12  arrested her, saying that she was interfering with evidence,

13  drugs.  And she is not underage.  We tested her for anything

14  else, and my wife was called by my daughter when she was getting

15  beat, arrived at the scene and lost it, and, you know, her

16  little girl was being arrested.  So that's what happened.  But

17  the case was tried and found there was no case.

18              THE COURT:  Okay.  Thank you very much.

19              VENIREPERSON COSTELLO:  Okay.

20         (End of bench conference.)

21              THE COURT:  Okay.  Ms. Hunt.

22              VENIREPERSON HUNT:  I need to approach the bench, too.

23              THE COURT:  Did you want to come up here, Ms. Hunt?

24              VENIREPERSON HUNT:  Yes, please.

25         (Bench conference with lead attorneys and Venireperson
```

 1          Hunt:)

 2              THE COURT:  Hi.  Wait until they get up here.

 3              VENIREPERSON HUNT:  Okay.

 4              THE COURT:  They've got to hear what you've got to

 5     say.

 6              VENIREPERSON HUNT:  Okay.  My daughter has two felony

 7     convictions on drugs and theft and served jail time.

 8              THE COURT:  Is that through the federal court or the

 9     state court?

10              VENIREPERSON HUNT:  State.  Dallas state jail.  And if

11     it matters, I'm raising a 15-year-old grandchild who's on the

12     computer 24 hours a day.

13              THE COURT:  Well, do you monitor the grandchild real

14     close?

15              VENIREPERSON HUNT:  It's in my bedroom, yes.  I'm up

16     with her.

17              THE COURT:  Okay.  Thank you.

18          (End of bench conference.)

19              THE COURT:  Okay.  Mr. Garza.

20              VENIREPERSON GARZA:  May I approach?

21              THE COURT:  Yes, you may.

22          (Bench conference with lead attorneys and Venireperson

23          Garza:)

24              THE COURT:  Wait until they get up here.  Come on up

25     here, but wait until they get here so they can hear what you

```
 1  say.  Okay.  Go ahead.

 2            VENIREPERSON GARZA:  I have an ex-brother-in-law that

 3  is serving time for murder because one of my nieces. . .

 4            THE COURT:  Who is serving the time?

 5            VENIREPERSON GARZA:  My ex-brother-in-law.

 6            THE COURT:  Oh, okay.

 7            VENIREPERSON GARZA:  In Fort Wayne, Indiana.

 8            THE COURT:  Okay.

 9            VENIREPERSON GARZA:  For murdering a guy that fondled

10  my niece, and I have four --

11            MR. LEWIS:  What?  I'm sorry, Judge, sir,

12            VENIREPERSON GARZA:  Fondled, played with her.

13            MR. LEWIS:  Oh, I'm sorry.

14            VENIREPERSON GARZA:  I have four nephews that are

15  doing time also here in state prison.

16            THE COURT:  On what kind of charges?

17            VENIREPERSON GARZA:  On drug charges.

18            THE COURT:  Okay.  Anything else?

19            VENIREPERSON GARZA:  No, that's it.

20            THE COURT:  Where are they doing their time?

21            VENIREPERSON GARZA:  One of them is in Jacksboro; the

22  other one is in Abilene.  I don't know where the other two are.

23            THE COURT:  Okay.

24            VENIREPERSON GARZA:  I just moved back from Kansas two

25  years ago.
```

```
 1           THE COURT:  Okay.

 2           VENIREPERSON GARZA:  Because my mom was going through

 3  all this stress.

 4           THE COURT:  She's had her hands full.

 5           VENIREPERSON GARZA:  Yes, she has.

 6           THE COURT:  Okay.  Thank you.

 7      (End of bench conference.)

 8           THE COURT:  Okay.  Mr. Almanza.

 9           VENIREPERSON ALMANZA:  May I approach, Your Honor?

10           THE COURT:  Yes.

11      (Bench conference with lead attorneys and Venireperson

12       Almanza:)

13           THE COURT:  Hi.  Wait until they get up here.  They've

14  got to hear what you've got to say.  Okay.  Go ahead.

15           VENIREPERSON ALMANZA:  Well, Your Honor, in 2002 I was

16  convicted of harassment by my ex-wife, and my nephew right now,

17  he's in jail accused of murder.

18           THE COURT:  Okay.  You were convicted for harassment.

19  Is that a misdemeanor?

20           VENIREPERSON ALMANZA:  It was one day.

21           THE COURT:  Okay.  Thank you.

22      (End of bench conference.)

23           THE COURT:  Ms. Sheen.

24           VENIREPERSON SHEEN:  I have a brother who was

25  convicted of a third-degree felony for prescription fraud.
```

```
 1            THE COURT:  Okay.  Thank you.
 2       Ms. Askins.
 3            VENIREPERSON ASKINS:  May I approach?
 4            THE COURT:  Yes, you can come up here.
 5       (Bench conference with lead attorneys and Venireperson
 6        Askins:)
 7            THE COURT:  Hello.
 8            VENIREPERSON ASKINS:  Hello.
 9            THE COURT:  Wait until they get up here.  They've got
10  to hear what you have to say.  Okay.  You can go ahead now.
11            VENIREPERSON ASKINS:  My son spent ten months in
12  prison for a two-year DWI conviction.
13            THE COURT:  Okay.  Thank you.
14            MR. LEWIS:  I'm sorry, ma'am.  What was your name?
15            VENIREPERSON ASKINS:  Pam Askins.
16            MR. LEWIS:  Thank you.
17       (End of bench conference.)
18            THE COURT:  Okay.  Shirley Allen.
19            VENIREPERSON ALLEN:  Your Honor, I believe it was a
20  civil suit I was a witness in.  It was for someone had given a
21  $14,000 hot check, and they were suing for a judgment against
22  them.
23            THE COURT:  Okay.  That probably would be a civil
24  suit.  Thank you.
25       Ms. Blankemeyer.
```

```
 1          VENIREPERSON BLANKEMEYER:  May I approach?

 2      (Bench conference with lead attorneys and Venireperson

 3       Blankemeyer:)

 4          THE COURT:  Hi.

 5          VENIREPERSON BLANKEMEYER:  Hi.

 6          THE COURT:  Wait until they get up here.  They've got

 7  to hear what you've got to say.  Okay.

 8          VENIREPERSON BLANKEMEYER:  When I was 19, I survived a

 9  rape and beating, and I was a child.  And he received a 150-year

10  sentence.  And then again six years ago, I was raped again, but

11  the guy was no billed.

12          THE COURT:  Okay.  Thank you.

13      (Venireperson Blankemeyer leaves bench.)

14          MR. BURNS:  What was that juror's name?  I'm sorry.

15          THE COURT:  She was raped twice.

16          MR. BURNS:  No.  I say her name.

17          THE COURT:  Oh, I'm sorry.

18          THE COURT COORDINATOR:  Ms. Blankemeyer.

19          THE COURT:  Lisa Blankemeyer.

20          MR. BURNS:  I'm sorry, Your Honor.  Thank you.

21      (End of bench conference.)

22          THE COURT:  Ms. Hall.

23          VENIREPERSON HALL:  My son was charged with possession

24  of prescription drugs, and I think that's it.

25          THE COURT:  Okay.  Thank you.
```

```
 1        Let's see, Mr. Newton.  Was there one. . .

 2             VENIREPERSON TAYLOR:  I didn't respond.

 3             THE COURT SECURITY OFFICER:  She didn't raise her hand

 4    earlier, Judge.

 5             THE COURT:  That's Ms. Taylor?  Do you have a "yes"

 6    answer to the --

 7             VENIREPERSON TAYLOR:  Yes, sir.

 8             THE COURT:  Okay.  I'll call on you in just a minute.

 9             VENIREPERSON NEWTON:  Me first?

10             THE COURT:  Yes, come on up, Mr. Newton.

11        (Bench conference with lead attorneys and Venireperson

12         Newton:)

13             THE COURT:  Let me turn the microphone off.  Okay.  Go

14    ahead.

15             VENIREPERSON NEWTON:  I have a friend that was in the

16    same situation as this case is in.  And this was probably a year

17    ago in Fort Worth, so. . .

18             THE COURT:  What, did something on --

19             VENIREPERSON NEWTON:  Same deal, same set-up,

20    scenario.

21             THE COURT:  By law enforcement officers pretending to

22    be a child?

23             VENIREPERSON NEWTON:  Correct.

24             THE COURT:  Did any legal activity result?

25             VENIREPERSON NEWTON:  I don't know if he has done any
```

1   legal or not.  They put him on probation, and he broke that, I

2   know that.  So he was in jail for a little while.  So I don't

3   know if they've done anything else with that.

4            THE COURT:  Well, do you think the fact that you've

5   known somebody that had that situation, will that affect your

6   decision?

7            VENIREPERSON NEWTON:  I mean, I have my opinions, but

8   I guess it depends on the evidence, you know, so. . .

9            THE COURT:  Our goal is to get somebody who can --

10  have a jury made up of people who can listen to the evidence in

11  this case and decide this case on the basis of the evidence

12  without being influenced by something else.  Can you do that?

13           VENIREPERSON NEWTON:  I'm sure I'll be okay.  Yeah,

14  sure.

15           THE COURT:  Okay.  Thank you.

16       (End of bench conference.)

17           THE COURT:  Let's see, that was Deborah Taylor?

18       (Bench conference with lead attorneys and Venireperson

19        Taylor:)

20           THE COURT:  Come on up.  How are you this morning?

21           VENIREPERSON TAYLOR:  Just fine.

22           THE COURT:  Wait till these lawyers get up here.

23  They've got to hear.  Go ahead.

24           VENIREPERSON TAYLOR:  I forgot.  When I was young, a

25  guy exposed himself walking home from Girl Scouts, me and a

1    friend.  And, also, my niece was involved in a sexual

2    molestation by her grandfather last year.

3              THE COURT:  Okay.  Thank you.

4         (End of bench conference.)

5              THE COURT:  Okay.  I believe I've called on everyone

6    who had a "yes" answer to the question asking about criminal

7    matters.  If I've overlooked anyone, raise your hand now so I

8    can call on you.  If you don't raise your hand, I'll assume that

9    I've called on everyone who needed to be called on.

10        (No response.)

11             THE COURT:  I don't see any further hands.

12        Is there anyone who has answered either of the last two

13   questions, the one about law enforcement agencies and the one

14   about criminal matters, is there anyone who would be so

15   influenced by the facts that you've related to me that you would

16   have any concern about being fair and impartial in this case?

17        Our goal is to have a jury in this case that is made up of

18   members who can decide this case on the basis of the evidence

19   and what happens here in the courtroom without being influenced

20   by something in your background.  Is there anyone who has a

21   concern that you can't do that, whether it's based on some facts

22   you've told me about already or on any other fact?  Is there

23   anyone who has a concern that you couldn't be completely fair

24   and impartial as a juror in this case and decide the case on the

25   basis of the evidence without being influenced by something in

1    your background?

2         (No response.)

3              THE COURT:  If so, raise your hand if you have a

4    concern about that.

5         (No response.)

6              THE COURT:  I don't see any hands on that.

7         Does anyone on the jury panel entertain the opinion that

8    the witnesses and evidence produced by the government are more

9    worthy of belief than the witnesses or evidence produced by the

10   defendant in any case, simply and solely because they're

11   presented by the government?  If so, raise your hand.

12        (No response.)

13             THE COURT:  I don't see any hands on that.

14        Would any of you give greater weight to the testimony of a

15   law enforcement officer than to that of another witness, simply

16   and solely because of his or her official capacity?  If so,

17   raise your hand.

18        (No response.)

19             THE COURT:  I don't see any hands on that.

20        Do any of you have any bias or prejudice, either in favor

21   of or against the government, in a case such as this?  If so,

22   raise your hand.

23        (No response.)

24             THE COURT:  Other than what I've been told by people

25   who came up to the microphone, and if you've already answered

1   this by coming up to the microphone you don't need to do it

2   again.  Is there anyone who personally or through a family

3   member or close friend has ever used the Internet to try to

4   engage in some sort of sexual activity, and I don't know how to

5   define that.  I'm not talking about the usual dating sort of

6   thing that goes on through the Internet.  Anything remotely

7   similar to what the government has accused the defendant of in

8   this case, and I don't know how to define it any better than

9   that.

10        (Venireperson No. 36 raises hand.)

11            THE COURT:  I see it, Fleather.

12        Is there anyone on the jury panel who has had a family

13   member involved in any such activity or a close friend involved

14   in any such activity or who, yourself, has been involved in any

15   such activity where the Internet has been used for some sexual

16   purpose?  And I'm not asking those who have already told me

17   about that to tell me again.  Only those who haven't already

18   disclosed it.

19        Now, I saw a hand way back there, but I believe you've

20   already told me what you had to tell, haven't you?

21            VENIREPERSON NEWTON:  Yes.

22            THE COURT:  That was --

23            VENIREPERSON NEWTON:  Newton.

24            THE COURT:  -- Mr. Newton.  Were you the one who

25   raised your hand a minute ago?

1          VENIREPERSON NEWTON:  Yes, sir.

2          THE COURT:  Okay.  You don't need to tell me again.

3     Is there anyone other than him who has a "yes" answer to

4     what I'm asking you about now?  If so, raise your hand.

5     (No response.)

6          THE COURT:  I don't see any further hands on that.

7          Now, in a criminal case the burden is on the government to

8     prove that the defendant is guilty beyond a reasonable doubt.

9     That's a different or higher standard than the preponderance of

10    the evidence standard which is applied in civil cases.

11         The law presumes a defendant to be innocent of crime; thus,

12    a defendant, although accused, begins the trial with a clean

13    slate with no evidence against him.  And the law permits nothing

14    but legal evidence presented before the jury to be considered in

15    support of any charge against the accused.  So the presumption

16    of innocence alone is sufficient to acquit a defendant unless

17    the jurors are satisfied beyond a reasonable doubt of the

18    defendant's guilt after careful and impartial consideration of

19    all the evidence in the case.

20         The law does not require the government to prove a

21    defendant's guilt beyond all possible doubt.  The test is one of

22    reasonable doubt.  A reasonable doubt is a doubt based upon

23    reason and common sense, the kind of doubt that would cause a

24    reasonable person to hesitate to act.  Proof beyond a reasonable

25    doubt must, therefore, be proof of such a convincing character

1    that a reasonable person would not hesitate to rely and act upon

2    it in the most important of his or her own affairs.

3         A defendant is never to be convicted on mere suspicion or

4    conjecture.  The burden is always upon the prosecution to prove

5    the defendant's guilt beyond a reasonable doubt.  That burden

6    never shifts to a defendant, for the law never imposes upon a

7    defendant in a criminal case the burden or duty of calling any

8    witnesses or producing any evidence.

9         Now, is there anyone on the jury panel who cannot follow

10   the law concerning burden of proof or reasonable doubt as I've

11   explained it to you?  If so, raise your hand.

12        (No response.)

13             THE COURT:  I don't see any hands on that.

14        The defendant is brought to trial on the basis of an

15   indictment, as I've explained to you.  The indictment is not

16   evidence.  It is simply a method by which the government brings

17   a person to trial.

18        Now, is there anyone on the jury panel who feels that

19   simply because a defendant has been indicted, that that in

20   itself is some evidence of guilt?  If so, raise your hand.

21        (No response.)

22             THE COURT:  I don't see any hands on that.

23        Now, in a criminal case the defendant does not have to

24   testify.  He is not required to present any evidence on his own

25   behalf.  If the defendant elects not to testify, the jury may

1    not consider that for any purpose in deciding on his guilt.

2       Is there anyone on the jury panel who feels that if a

3    defendant fails to testify, that's some indication of his guilt?

4    If so, raise your hand.

5       (No response.)

6          THE COURT:  I don't see any hands on that.

7       Now, each of you has a piece of paper called a juror

8    questionnaire.  It calls upon you to give certain information.

9    Some of that information you've already provided in the response

10   to the questionnaire that you sent through the mail or e-mailed

11   back.  However, this does call for some additional information.

12      I'm going to have each of you stand and give that

13   information, and the reason I am is to help the lawyers decide

14   on the exercise of their peremptory challenges.  It will give

15   them some additional information to help them more intelligently

16   exercise those challenges.  Plus, it would give the lawyers an

17   opportunity to see each of you somewhat isolated from the others

18   as you're speaking, standing up, a better chance to size you up,

19   so to speak.

20      So I'm going to start with Ms. Passmore.  Now, with her,

21   I'm going to ask her questions instead of her just telling me

22   what it is the form calls for.  And I'm doing that so the rest

23   of you can see exactly what I'm looking for.  And then once I've

24   completed with Ms. Passmore, each of you will stand up, one

25   after the other, and give the information called for by the

 1    form, bearing in mind what you learned from seeing Ms. Passmore

 2    perform.

 3        What is your full name?

 4            VENIREPERSON PASSMORE:  Wynoka Sue Passmore.

 5            THE COURT:  And what city do you live in?

 6            VENIREPERSON PASSMORE:  Arlington.

 7            THE COURT:  And what part of Arlington do you live in?

 8            VENIREPERSON PASSMORE:  Central.

 9            THE COURT:  Okay.  This is for the benefit of all of

10    you.  If you live in Arlington or the city of Fort Worth, in

11    addition to saying what city you live in, say where in the city.

12        If you live in an unincorporated area of some county, say

13    that, that you live in an unincorporated area of whatever county

14    it is, and also identify the town or city nearest to where you

15    live.

16        Okay.  Are you married?

17            VENIREPERSON PASSMORE:  Yes.

18            THE COURT:  And what is the name of your husband?

19            VENIREPERSON PASSMORE:  Roy Edward Passmore.

20            THE COURT:  What is your occupation?

21            VENIREPERSON PASSMORE:  College professor.

22            THE COURT:  And what college is that?

23            VENIREPERSON PASSMORE:  Texas Wesleyan University here

24    in Fort Worth.

25            THE COURT:  And what do you teach?

1           VENIREPERSON PASSMORE:  I teach educators, teach

2    teachers.

3           THE COURT:  Okay.  And have you had other occupations

4    in the past?

5           VENIREPERSON PASSMORE:  Real estate part-time.

6           THE COURT:  Okay.  What is your spouse's occupation?

7           VENIREPERSON PASSMORE:  He's retired.

8           THE COURT:  What did he do before he retired?

9           VENIREPERSON PASSMORE:  The last thing he did for ten

10   years was a manager of a bakery, a Tom Thumb bakery.

11          THE COURT:  Have you ever served on a jury before?

12   And I'm not talking about being on a panel but actually serving

13   on a jury.  I'm talking about either a petit jury, which is what

14   we're selecting now.  A petit jury is the jury that participates

15   in a particular trial, whether it's a criminal case or a civil

16   case.

17          VENIREPERSON PASSMORE:  No, I have not.

18          THE COURT:  A grand jury, as you know, is a group of

19   persons who decides on whether to return indictments.  Have you

20   not served on either kind?

21          VENIREPERSON PASSMORE:  No, I have not.

22          THE COURT:  Okay.  Thank you.  You can be seated.

23       Had she served on a jury, I would want to know whether it

24   was a petit jury or a grand jury.  I would want to know if it

25   was in the state court or the federal court, and I would want to

1   know if it was a petit jury, whether it was a criminal case or a

2   civil case and whether the jury reached a verdict.  I'm not

3   interested in knowing what the verdict was, just simply did the

4   jury reach a verdict.  And if you have served on a jury more

5   than one time, whether it's a petit jury or a grand jury, I

6   would want all of that information about each time you've served

7   on a jury.

8        Okay.  Ms. Loyd, can you give us the information called for

9   by the form?

10          VENIREPERSON LOYD:  Yes, sir.  Nancy Loyd.  I live in

11   Mansfield, Texas.  I am married to Kenneth Loyd.  I work for the

12   Mansfield ISD.

13          THE COURT:  What do you do there?

14          VENIREPERSON LOYD:  Student nutrition manager.

15          THE COURT:  Okay.

16          VENIREPERSON LOYD:  My husband works for Vought

17   Aircraft Assembly in Dallas.

18          THE COURT:  Have you had other jobs in the past?

19          VENIREPERSON LOYD:  Pretty much domestic engineer.

20          THE COURT:  Okay.

21          VENIREPERSON LOYD:  And, no, I have not served on any

22   jury.

23          THE COURT:  Okay.  Thank you.

24       Mr. Lemley.

25          VENIREPERSON LEMLEY:  Robert Terry Lemley.  I live in

1    southwest Arlington.  I am married.  My wife is Paula Jo, and

2    she is a schoolteacher.  I work at Doskocil Manufacturing as the

3    customer service and traffic manager.  And I have served on a

4    jury before, a state jury.  It was a petit jury, and it was a

5    criminal case.  And we were sequestered, and the case was

6    settled prior to going to trial.

7               THE COURT:  Okay.  Thank you.

8         Ms. Murray.

9               VENIREPERSON MURRAY:  My name is Susan Murray.  I live

10   in Colleyville.  I am married, and my husband's name is Mike.

11   My occupation is I'm a grandmother, so I do everything.  And I

12   was a schoolteacher at one point before my children were born.

13   My husband is the vice president of a company called Davaco,

14   Incorporated, in Dallas, and I have never been on a jury.

15              THE COURT:  Okay.  Thank you.

16        Mr. Schweitzer.

17              VENIREPERSON SCHWEITZER:  Yes, sir.  My name is David

18   Harold Schweitzer.  I live in Millsap, Texas, or just outside of

19   Millsap, Texas, about a mile out in Parker County.  I'm married.

20   My spouse's name is Melissa Ann Donley.  My occupation currently

21   is flight test engineering at Lockheed Martin.  I've been in

22   flight tests since 1968 and spent ten years as an Air Force

23   pilot.

24        My spouse's occupation, she was an executive director of

25   CASA, Court Appointed Special Advocates, for kids.  She's

1  currently finished a degree at Tarleton, and she's looking for

2  work in the local area.

3      I have been on a jury.  It was state, a petit jury,

4  criminal, and we did reach a verdict.

5          THE COURT:  Okay.  Thank you.

6      Ms. Martinez.

7          VENIREPERSON MARTINEZ:  Yes.  My name is Sandra

8  Martinez.  I do live in south Arlington, and I'm single.  And my

9  occupation is systems engineer in L-3 Communications.  And I

10  have never done any prior service for jury.

11          THE COURT:  Okay.  Who do you work for?

12          VENIREPERSON MARTINEZ:  L-3 Communications.

13          THE COURT:  Okay.  Thank you.

14      Ms. Sheen.

15          VENIREPERSON SHEEN:  I am Janis Sue Sheen.  I live in

16  Grapevine.  I am single.  I'm a flight attendant with American

17  Airlines.  And I have served on two state, petit juries for

18  criminal cases.

19          THE COURT:  Did you reach a verdict both times?

20          VENIREPERSON SHEEN:  Yes, we did.

21          THE COURT:  Okay.  Thank you.

22      Ms. Askins.

23          VENIREPERSON ASKINS:  My name is Pamela Lynn Askins.

24  I live in White Settlement, Texas, which is west Fort Worth.  I

25  am divorced.  I work at Texas Exchange Bank for 25 years.  I'm

1  assistant vice president.  And I have not served on a jury.

2          THE COURT:  Okay.  Thank you.

3      Ms. Allen.

4          VENIREPERSON ALLEN:  My name is Shirley Allen.  I am

5  married.  I live in Aurora, Texas, or actually unincorporated

6  outside of Aurora.  I was a banker for 17 years and owned my own

7  construction company.  My spouse is currently in construction.

8  I have served on the grand jury and the petit jury, and in the

9  criminal case we did return a verdict.

10         THE COURT:  Okay.  Thank you.

11     Ms. Green.

12         VENIREPERSON GREEN:  Gretchen Green.  I live in

13 Grapevine.  I'm married.  My husband is Jack Green.  I'm a

14 registered nurse.  I work for Texas Health Resources.  My

15 husband works for Rad Collins (phonetics) as a database

16 administrator, and I've never been selected for a jury.

17         THE COURT:  Okay.  Thank you.

18     Mr. Bays.

19         VENIREPERSON BAYS:  My name is Kent Bays.  I live in

20 northeast Arlington.  I'm married to my wife Diane.  I'm an

21 airline pilot for American Airlines.  I fly international,

22 captain.  I've also been an Air Force pilot and a stockbroker

23 for Merrill Lynch.  My wife is also a flight attendant for

24 American Airlines.  I have served the State of Texas in a petit

25 jury.  We reached a verdict in a criminal case.

```
 1              THE COURT:  Okay.  Thank you.
 2         Mr. Puente.
 3              VENIREPERSON PUENTE:  It's Martin Puente.  I live in
 4    Crowley.  I am married.  Work for AT&T.  My wife is an office
 5    clerk.  No jury.
 6              THE COURT:  Okay.  Thank you.
 7         Ms. Summerhill.
 8              VENIREPERSON SUMMERHILL:  I'm April Summerhill.  I
 9    live in Aledo.  Married to Jerry Summerhill.  He works at
10    Lockheed Martin.  I'm a postal employee, city carrier.  And I
11    have not served on any jury.
12              THE COURT:  Okay.  Thank you.
13         Mr. Oneil.
14              VENIREPERSON ONEIL:  My name is Craig Jay Oneil.  I
15    live in Keller.  I'm married.  My wife's name is Angela.  I am a
16    licensed plumber for TD Industries.  My wife is a secretary for
17    Cochran Financial Group.  I've never served on a jury.
18              THE COURT:  Okay.  Thank you.
19         Jan Hall.
20              VENIREPERSON HALL:  My name is Laurie Jan Hall.  I
21    live on the west side of Fort Worth.  I'm married to John Hall.
22    My occupation is teacher, elementary school.  My husband is
23    self-employed.  He has Export Oil and Gas, which is a leasing
24    company.  I have served on a civil jury, petit jury.
25              THE COURT:  Okay.  How many times?  Several?
```

1              VENIREPERSON HALL:  No.  Just once.

2              THE COURT:  Oh, okay.  I misunderstood you.  Did the

3    jury reach a verdict?

4              VENIREPERSON HALL:  Yes, we did.

5              THE COURT:  Okay.  Thank you.

6         Ms. Blankemeyer.

7              VENIREPERSON BLANKEMEYER:  My name is Lisa

8    Blankemeyer.  I live in Keller.  I'm single.  I was a

9    cosmetologist 25 years.  Now I run a restaurant, Manny G's, and

10   I'm manager there.  And I have never served on a jury.

11             THE COURT:  Okay.  Thank you.

12        Mr. Almanza.

13             VENIREPERSON ALMANZA:  My name is Manual Almanza.  I

14   live on the west side of Fort Worth.  I'm married.  My wife is

15   Susanna Lopez Almanza.  I work for New Breed as a cell phone

16   refurbisher.  My wife cleans houses and offices.  I have been on

17   a state, petit, criminal jury, and we did reach a verdict.

18             THE COURT:  Thank you.

19        Mr. Garza.

20             VENIREPERSON GARZA:  My name is Adrian Garza.  I live

21   in Mineral Wells.  I'm married.  I work for Devon Energy as a

22   gas plant operator/analyzer.  My wife, she's a home wife.  And I

23   never have served on the jury.

24             THE COURT:  Okay.  Thank you.

25        Diana Russell.

1           VENIREPERSON RUSSELL:  Yes.  I'm Diana Russell.  I

2    live in Mansfield, Texas.  My husband's name is Rad Russell.

3    I'm a prekindergarten teacher for Arlington ISD.  My husband's

4    occupation is owning a building automation company, and I have

5    served on state juries, petit for criminal and civil, and we did

6    reach a verdict.

7           THE COURT:  Okay.  Thank you.

8       Brenda Hunt.

9           VENIREPERSON HUNT:  Brenda Kay Hunt.  I live in North

10   Richland Hills.  I am single.  Retired from the government

11   Postal Service.  I've served on two state, petit juries.  Yes,

12   we did reach a verdict both times.

13          THE COURT:  Thank you.

14      Lucy Hale.

15          VENIREPERSON HALE:  My name is Lucy Maria Hale.  I

16   live in central Arlington.  I am married.  My husband's name is

17   Christopher Carseano (phonetics).  I'm the education coordinator

18   for the Dallas Zoo and the Dallas Aquarium at Fair Park, which

19   are part of the City of Dallas's Parks and Recreation

20   Department.  Prior to that, I worked for the Fort Worth Museum

21   of Science and History, the Needham Public School System up in

22   Massachusetts, and the Boston Museum of Science.  My husband is

23   a coordinator for Tarrant County College and a part-time acting

24   teacher, and I have never served on a jury.

25          THE COURT:  Thank you.

```
 1       Ms. Giorandino.

 2              VENIREPERSON GIORANDINO:  Christine Ann Giorandino.

 3   I'm an analyst with American Airlines.  I'm sorry.  I live in

 4   north Arlington.

 5              THE COURT:  Can you hold that up -- Why don't you

 6   start over again and hold it up in front of you.

 7              VENIREPERSON GIORANDINO:  Is that better?  Okay.

 8   Christine Ann Giorandino.  I live in north Arlington.  I'm an

 9   analyst with American Airlines.  I am married to William

10   Decicco.  He is an auto mechanic, and I have never served on a

11   jury.

12              THE COURT:  Okay.  Thank you.

13       Mr. Johnson.

14              VENIREPERSON JOHNSON:  My name is Gil Johnson, and I

15   live in north Arlington.  My wife is Martha Johnson, and I work

16   for Siemens.  I'm a fire technician, and my wife is unemployed

17   right now.  And I haven't served on a jury.

18              THE COURT:  Okay.  Thank you.

19       Joy Allmon.

20              VENIREPERSON ALLMON:  Yes.  My name is Joy Ann Allmon.

21   I live in Weatherford, Texas.  I am married.  My husband's name

22   is Ricky.  I currently work at Lockheed Martin as a shop clerk,

23   and my husband is retired from Lockheed Martin.  And previously

24   was -- did secretarial work.  And I did have a civil case.  I

25   believe it was -- It's been so long ago, I don't remember.  And
```

```
 1   we did reach a decision.
 2             THE COURT:  Okay.  Thank you.
 3        Nancy Gonzalez.
 4             VENIREPERSON GONZALEZ:  Yes.  My name is Nancy
 5   Gonzalez.  I live in Euless.  I am married.  My husband's name
 6   is Thomas Gonzalez.  I'm an airport agent with American
 7   Airlines, and my husband is an aircraft mechanic with American
 8   Airlines.  And I have never served on a jury.
 9             THE COURT:  Thank you.
10        Brian Miller.
11             VENIREPERSON MILLER:  My name is Brian Neil Miller.  I
12   live in Roanoke, Texas.  I am married.  Her name is Tena Miller.
13   I manage a team of bond traders for DT Ameritrade.  My wife is a
14   401(k) relationship manager with Fidelity, and I have never
15   served on a jury.
16             THE COURT:  Okay.  Thank you.
17        Cindy Roden.
18             VENIREPERSON RODEN:  My name is Cindy Roden.  I live
19   in Euless, Texas.  I am not married.  I work for the Federal
20   Aviation Administration as a regional operations officer.  I've
21   worked there for three years.  Prior to that, I've been an air
22   traffic control specialist for 26 years.  I have served on two
23   state, petit juries, and we were able to reach a verdict on
24   both.
25             THE COURT:  Okay.  Thank you.
```

```
 1        Ms. Horvath.

 2             VENIREPERSON HORVATH:  My name is Mary Horvath.  I

 3   live in Keller, Texas, northeast Tarrant County.  I'm divorced.

 4   I'm a gardener for the City of Fort Worth Parks and Community

 5   Service Department.  And I have served on two state, jury --

 6   petit juries, one civil, one criminal.

 7             THE COURT:  Okay.  Did you reach a verdict in each

 8   one?

 9             VENIREPERSON HORVATH:  Yes.  Yes, both times.

10             THE COURT:  Okay.  Thank you.

11        Benjamin Perry.

12             VENIREPERSON PERRY:  Yes.  My name is Benjamin Perry,

13   III.  I live in Grapevine, Texas.  I am married to Timba

14   (phonetics) Perry.  My occupation is pharmaceutical sales.  My

15   wife's occupation is dentistry.  My prior occupations was

16   product line manager with Corning, and I also worked in the

17   military for ten years.  My spouse has always been a dentist.

18   I've never been on a jury before.

19             THE COURT:  Okay.  Thank you.

20        Mr. Costello.

21             VENIREPERSON COSTELLO:  Richard William Costello.  I

22   am married.  My wife's name is Sally.  We live in Mansfield,

23   Texas.  I am a salesman for a company called Colony Group.  My

24   wife is a realtor.  And I have not served any jury duties.

25             THE COURT:  Thank you.
```

```
 1        Janice Atchley.

 2            VENIREPERSON ATCHLEY:  Yes.  My name is Janice

 3   Atchley.  I live in Bedford, Texas.  I am a hairstylist.  My

 4   husband is Jimmy Atchley, and he works for Allstate Insurance.

 5   I have been on two petit juries.  One was settled when we were

 6   deliberating, and the other, we did find a verdict.

 7            THE COURT:  Okay.  Thank you.

 8        Charles Gilchrist.

 9            VENIREPERSON GILCHRIST:  Charles Wayne Gilchrist.  I

10   live in Weatherford, Texas.  My wife's name is Trina.  She's a

11   full-time housewife, raising our kids.  I own Southwest Ford

12   Mitsubishi and Suzuki in Weatherford.  And I have not served on

13   a jury.

14            THE COURT:  Okay.  Thank you.

15        Mr. Borrego.

16            VENIREPERSON BORREGO:  Yes.  My name is Antonio

17   Borrego.  I work for the Federal Aviation Administration as a

18   manager.  My wife's name is Sylvia.  She works there as well.  I

19   have not served on a jury before.

20            THE COURT:  Okay.  Thank you.

21        I believe we have had enough people give the information

22   that we can select a jury from.  So, Ms. Taylor, I'm not going

23   to have you or the others give that information.  However, there

24   is some possibility that we'll have to come back to those who

25   haven't given the information, so from this point forward
```

1    continue to participate as if you had given the information.  In

2    other words, respond to questions, and so on, as if you had.  So

3    if we have to come back to you, we won't have to do that all

4    over again.

5         Now, my information is that this case probably will be

6    concluded today, at least the evidence will be concluded today,

7    which means the jury will probably start deliberating today and

8    could well reach a verdict today.  I don't know.  I can't

9    anticipate how long it would take a jury to reach a verdict.

10        If it goes beyond today, I'm satisfied that it would be

11   completed tomorrow.  Now, our work hours normally are that we

12   take about a 15-minute recess sometime about mid-morning and

13   about a 15-minute recess sometime about mid-afternoon.  We're

14   not scientific about when we take those recesses because we try

15   to finish up the project we're on before we do that.

16   As a matter of fact, I'm going to give you a recess in just a

17   few minutes, which will be the morning recess.

18        We normally take a one-hour lunch recess, and we're not

19   very scientific about when we start that.  It depends on where

20   we are with the witnesses, and so on.  We try to keep the trial

21   flowing as much as we can without interrupting events by

22   recesses, lunch, or otherwise.

23        We normally -- I think the evidence will be completed in

24   this case before the end of the business day.

25        Is that probably the way it's going to work out?

1              MR. LEWIS:  I believe so, sir, yes.

2              THE COURT:  Do you agree to that, Mr. Burns?

3              MR. BURNS:  Yes, Your Honor.

4              THE COURT:  Which means that the jury will start

5    deliberating before the end of the business day, probably.  If

6    the jury wants to continue to deliberate until they reach a

7    verdict, I'll leave that up to the jury, if the deliberation

8    carries beyond the end of the normal business day.  It's

9    conceivable that you could be here 7:00 or 8:00 o'clock if the

10   jury wants to keep deliberating until they reach a verdict.  I

11   can't predict that, but that is a possibility.

12       Now, is there anyone who has a problem with the schedule as

13   I've outlined it?  Now, if we come back tomorrow, if it turns

14   out the jury wants to come back and deliberate some more

15   tomorrow morning, we'd probably come back at 9:00 o'clock.  Is

16   there anyone who has a problem with the schedule I've outlined?

17   If so, let me know now so can deal with it.

18       (No response.)

19              THE COURT:  Okay.  I don't see any hands indicating

20   there's a problem.

21       Now, I'm going to let an attorney for each side ask some

22   additional questions if the attorney wants to.  There's no need

23   to ask any more questions unless the attorney feels a need to do

24   it.

25       If any more questions are asked, they will not be

1  argumentative in nature, and the lawyers know that this is not

2  the time to make statements.  It's simply the time to ask

3  questions that are not calculated to get the same information

4  I've asked for.

5       Does the government have any questions it wants to ask?

6            MR. LEWIS:  Just a couple, sir.

7            THE COURT:  You do?

8            MR. LEWIS:  Just a couple, sir, yes.

9            THE COURT:  Okay.  Go ahead.

10           MR. LEWIS:  Thank you, Judge.

11      For any reason, religious, moral, any other reason,

12  ethical, does anyone not feel that they can sit in judgment of

13  another person?

14           THE COURT:  If so, raise your hand.

15           MR. LEWIS:  Oh, I'm sorry.  If so, raise your hands.

16      (No response.)

17           THE COURT:  I don't see any hands on that.

18           MR. LEWIS:  Does anyone believe here that there is a

19  constitutional right to use words to entice a child to have sex

20  with an adult?  If so, raise your hand.

21           THE COURT:  If so, raise your hand.

22      (No response.)

23           THE COURT:  I don't see any hands on that.

24           MR. LEWIS:  I see no hands.

25      And last question:  Does everyone understand that it's no

1    excuse not to serve just because the subject matter is difficult

2    or distasteful?  If so, raise your hand.

3         (No response.)

4              THE COURT:  No hands.  Okay.  You can be seated.

5         Does the defendant have any questions?

6              MR. BURNS:  Just a couple questions, if I may.

7              THE COURT:  Okay.

8              MR. BURNS:  Ladies and gentlemen, knowing the nature

9    of this prosecution, is there anybody here, for any reason, that

10   you feel that you could not be fair and impartial to the defense

11   in the case where the allegations are solicitation online of a

12   minor?  Background, family members, whatever, anything at all,

13   do you feel that you couldn't be fair and impartial?

14             THE COURT:  If so, raise your hand.

15        (No response.)

16             THE COURT:  I don't see any hands on that.

17             MR. BURNS:  I believe that's all I've got, Your Honor.

18             THE COURT:  Okay.  Let me have the attorneys come up

19   here a minute.  Just one on each side.

20        (Bench conference with lead attorneys:)

21             THE COURT:  Okay.  The government has its usual six

22   strikes; the defendant, his usual ten.  That will take you down

23   through No. 28.  That's where you'll exercise your main strikes,

24   Mary Horvath.  I'm going to have one alternate, and the

25   alternate will be selected from 29, 30, or 31 on the list.

```
 1            MR. LEWIS:  And that's ending with Ms. Atchley, sir?

 2            THE COURT:  Starts with Perry and ends with Atchley.

 3            MR. LEWIS:  Thank you, sir.

 4            THE COURT:  And you have one strike, each of you, has

 5    one strike against 29, 30, or 31.

 6            MR. LEWIS:  Yes, sir.

 7            THE COURT:  I'll give you ten minutes to exercise your

 8    strikes.  You'll do it by marking through the names and then

 9    signing your list and dating it.  And give it to Fleather ten

10    minutes from now.  I'm going to give the jury a 15-minute

11    recess.  That gives y'all time to do your thing and her time to

12    make up the list before we come back in.

13        (End of bench conference.)

14            THE COURT:  The lawyers at this time are going down

15    the list and determining which of the names to challenge.  In

16    other words, the names of people they want stricken off.  While

17    they're doing that -- And once that's done, then the courtroom

18    deputy has to prepare the list of the people that will actually

19    serve on the jury.  It's the first 12 -- the first 13.  We have

20    an alternate.  So it will be the first 13 left when you take out

21    those that have been marked off.  So I'm going to give you a

22    15-minute recess while all that's being done.  If you would,

23    at the end of 15 minutes come back and be seated where you are

24    now.

25        (Court in recess, 11:05 a.m. until 11:25 a.m.)
```

```
 1              THE COURT:  Okay. As your name is called, come forward
 2   to be seated in the jury box.  Nancy Loyd, Robert Lemley, Sandra
 3   Martinez, Janis Sheen, Pamela Askins, Gretchen Green, Martin
 4   Puente, Joy Allmon, Gil Johnson, Lucy Hale, Jan Hall, April
 5   Summerhill, Benjamin Perry.
 6        Okay.  The court coordinator is going to call the names of
 7   those who should be in the jury box, and as your name is called,
 8   raise your right hand.
 9              THE COURT COORDINATOR:  Nancy Loyd, Robert Lemley,
10   Sandra Martinez, Janis Sheen, Pamela Askins, Gretchen Green,
11   Martin Puente, Joy Allmon, Gil Johnson, Lucy Hale, Jan Hall,
12   April Summerhill, Benjamin Perry.
13              THE COURT:  Is the government satisfied we've seated
14   the proper persons in the jury box?
15              MR. LEWIS:  It is, Judge.
16              THE COURT:  Is the defendant satisfied that we've
17   seated the proper persons in the jury box?
18              MR. BURNS:  Yes, Your Honor.
19              THE COURT:  Okay.  Now that the jury has been
20   selected, the remaining members of the panel will be excused.
21   You'll still have to call that Code-A-Phone starting today.
22   Thank you very much for being here.  Without you being here, we
23   couldn't have selected the jury.  So you have played an
24   important role today, but you're excused at this time.
25        (Rest of jury panel leaves, 11:28 a.m.)
```

1           THE COURT:  I'll ask those in the jury box to stand

2      and raise your right hands to be sworn as jurors in this

3      particular case.

4           (The jury is sworn.)

5           THE COURT:  Okay.  Y'all can be seated.  Now that

6      you've been selected and sworn, I'm going to give you some

7      preliminary instructions that will guide you during the evidence

8      part of the trial, the things that happen between now and the

9      time you start deliberating.

10          Once we reach the point in the trial where all the evidence

11     has been received and the lawyers have made their final

12     summations, I'll give you some rather lengthy instructions that

13     will guide you in your deliberations.  This is not intended to

14     be those instructions.  These instructions, though, are

15     important and should be taken into account throughout the trial.

16          It will be your duty to find from the evidence what the

17     facts are.  You, and you alone, are the judges of the facts.

18     You will then have to apply to those facts the law as the Court

19     will give it to you.  You must follow the law whether you agree

20     with it or not.

21          Now, nothing the Court may say or do during the course of

22     the trial is intended to indicate, nor should it be taken by you

23     as indicating, what your verdict should be.

24          The evidence from which you will find the facts will

25     consist of the testimony of witnesses, documents, and other

1   things received into the record as exhibits and any facts the

2   lawyers agree or stipulate to and any facts of which the Court

3   takes judicial notice, if that occurs.

4        Certain things are not evidence and must not be considered

5   by you.  For example, statements, arguments, and questions by

6   lawyers do not constitute evidence.  Objections to questions are

7   not evidence.  Lawyers have an obligation to their client to

8   make an objection when they believe evidence being offered is

9   improper under the rules of evidence, and you should not be

10  influenced by the wording of the objection or by the ruling the

11  Court makes on an objection.  If an objection is sustained,

12  ignore the question.  If the objection is overruled, treat the

13  answer like any other.

14       Anything you may have seen or heard outside the courtroom

15  is not evidence.  You are to decide the case solely on the

16  evidence presented here in the courtroom and what you see in the

17  courtroom, what happens here in the courtroom.

18       Now, there are two different kinds of evidence:  direct and

19  circumstantial.  Direct evidence is direct proof of a fact, such

20  as the testimony of an eyewitness.  Somebody who actually saw

21  something happen.  Circumstantial evidence is proof of a set of

22  facts from which you may infer or conclude that some other fact

23  exists.  And an example I give of that that may be timely:  If

24  you went to bed at night and there wasn't any snow on the

25  ground, but you woke up in the morning and it was covered with

1  snow, then that would be circumstantial evidence that it snowed

2  during the night even if you didn't see it.  And I'll give you

3  some further instructions on that matter as well as others at

4  the end of the case, but bear in mind that you can consider in

5  deciding the case both direct evidence as well as circumstantial

6  evidence.

7      Now, it will be up to you to decide which witnesses to

8  believe and which witnesses not to believe and how much of any

9  witness's testimony to accept or reject.  I'll give you some

10  guidelines later for determining the credibility of witnesses.

11      Now, as you know by now, this is a criminal case, and there

12  are basic rules about a criminal case that you must keep in

13  mind.  And I'm repeating what I told the panel earlier, but it's

14  important enough that I am going to review it again.

15      First, the defendant is presumed innocent until proven

16  guilty.  The indictment against the defendant brought by the

17  government is only an accusation.  It's nothing more.  It is not

18  proof of guilt or anything else.  The defendant, therefore,

19  starts out with a clean slate.

20      Second, the burden of proof is on the government until the

21  very end of the case.  The defendant has no burden to prove his

22  innocence or to present any evidence or to testify.

23      Since the defendant has the right to remain silent, the law

24  prohibits the jury in arriving at its verdict from considering

25  that the defendant may not have testified if he chooses not to.

1    The government must prove the defendant's guilt beyond a

2  reasonable doubt, and I'll give you some further instructions on

3  that point later, but bear in mind that in that respect a

4  criminal case is different from a civil case.

5    Now, during the trial you are not to discuss the case with

6  anyone or permit anyone to discuss it with you.  We don't want

7  you to discuss the case with people who are not on the jury

8  because we don't want you to be influenced by what somebody else

9  might think about the case.  In other words, you're to decide

10  the case collectively as a jury without being influenced by

11  anybody else's input.

12    The reason we prohibit you from discussing it with each

13  other until you start deliberating is we've found that jurors

14  tend to start forming opinions about a case when they discuss it

15  -- the case with each other.  And we don't want you to have an

16  opinion about the right and wrong of it until you've heard all

17  the evidence and you've heard all the arguments.  And, of

18  course, you do discuss it with each other when you're

19  deliberating on the verdict, but that's the reason we prohibit

20  the discussion, even amongst yourselves, before then.

21    Do not read or listen to anything touching on the case in

22  any way.  I don't know that there would be any news media

23  coverage that you would be exposed to before you reach a

24  verdict.  If there happened to be, shut it out.  Don't pay any

25  attention to it.  Don't listen to it if it's a news report or

1    read it if it's in the newspaper.  And I can't emphasize more

2    than should be emphasized that this case is to be decided on the

3    basis of what you hear here and what happens in the courtroom as

4    opposed to being influenced by something outside.

5         Do not try to make any investigation about the case.  Do

6    not conduct research, such as looking up a dictionary definition

7    of a word, during the course of the trial.  If you need to

8    understand the meaning of something, we'll provide that

9    definition in the instructions.  You're to be guided in your

10   deliberations and decisions by what you learn in the courtroom

11   during the trial, of course, taking into account the legal

12   instructions I give you.

13        Now, as far as the lawyers are concerned and those others

14   connected with the case, don't have any communication at all

15   with those people during the trial.  If you pass one of them in

16   the hall, make out like he or she doesn't exist.  They'll

17   understand why you don't speak to them and presumably they won't

18   speak to you.  If there were any communication between any

19   persons like that and anyone on the jury, it could be

20   misinterpreted and somebody could reach the conclusion that

21   there had been an improper communication.  So the best way to

22   avoid that is simply to have none.

23        And I again emphasize:  Keep an open mind until you start

24   your deliberations at the end of the case.

25        I don't allow jurors to take notes during the course of the

1    trial.  I have more than one reason for that, but the main

2    reason is I think note taking can be distracting, not only to

3    the person taking the notes, but to the persons around the note

4    taker.  It's much more important, in my view, that everybody on

5    the jury pay very close attention to what's going on in the

6    courtroom, and in particular when a witness is testifying, to

7    pay close attention to the witness.

8         You form opinions day in and day out whether the people

9    you're talking to or conducting business with you are being

10   honest with you or candid with you by the way they react when

11   you have discussions with them, their facial expressions, how

12   long it takes them to respond to your questions, and that sort

13   of thing.  Those are things you instinctively use to judge the

14   honesty and integrity and credibility of the people you are

15   dealing with, and you can use those same skills in evaluating

16   whether a witness is telling the truth and maybe when a witness

17   is fudging a little bit.

18        And I think it's much more important for you to pay

19   attention to what's going on in the courtroom so you can make

20   those evaluations than to try to take notes.  And I think you'll

21   be surprised how well your collective memory will serve you as

22   to what the evidence is without the need to take notes.

23        Now, during the trial I may be called upon to rule on

24   motions or objections made by lawyers.  You should not infer

25   from any ruling I may make that I have any opinions on the

1    merits of the case favoring one side or another.  If I sustain

2    an objection to a question that goes unanswered by the witness,

3    you should not speculate on what the answer might have been if

4    the witness had answered it.  Nor should you draw any inference

5    from the question itself.

6         Now, during the trial it may be necessary for me to confer

7    with the lawyers out of your hearing concerning legal matters.

8    If that occurs, we'll try to do it up here, with the lawyers

9    coming up here, with me turning the microphone off.  If I see

10   that it's going to take a while, I might ask you to go back to

11   the jury room while we discuss whatever it is.  You can be

12   assured that when we do things like that, we're not discussing

13   things that are of concern to you but will simply be legal

14   matters.

15        Now, the more formal parts of the trial are going to start

16   as soon as I get through talking, and I'm going to take you step

17   by step what happens during a trial so you'll know what to

18   expect next.  The first thing that will happen when I get

19   through talking is the defendant will stand and the attorney for

20   the government will read the wording of the indictment, and the

21   defendant will enter a formal plea of guilty or not guilty.

22   Presumably it will be not guilty because that's what his plea

23   has thus far been.

24        After that occurs, then each side is given an opportunity

25   to make an opening statement.  It's limited to five minutes per

1   side, and neither side has to give an opening statement.  In an

2   opening statement is not given by one side or another, don't

3   attach any significance to it other than the lawyer concluded it

4   was not necessary or was inappropriate.

5        The defendant has the right, if he wants to, to withhold

6   making an opening statement at the beginning, and for his lawyer

7   to make the defendant's statement after the government's

8   evidence is concluded.  So if the defendant says, through his

9   attorney, he's reserving the right to make an opening statement

10  later, that's what that will mean.

11       The opening statement is not an argument of any kind.  It's

12  simply a dispassionate statement of what the lawyer expects the

13  evidence to prove from his client's standpoint.  After each side

14  has made an opening statement -- And by the way, the government

15  goes first.  It makes the opening statement first, and when we

16  start the evidence the government puts on the evidence first.

17  And when we have the final summations, the government's lawyer

18  goes first.  That's because the government has the burden of

19  proof.  The government has to prove something, and in order to

20  do it in a logical sequence, the government's lawyer always has

21  to be the first to make a move.

22       After the opening statements have been completed, then the

23  government's lawyer will start offering evidence in its case.

24  It will be calling witnesses and offering exhibits.

25       After the attorney for the government has questioned a

1    witness, then, of course, the attorney for the defendant has the

2    right to cross-examine that witness.  It's not like you see on

3    TV because the scope of the cross-examination is limited to the

4    subject of the direct examination.  We don't allow argumentative

5    questions, we don't allow the lawyers to argue with witnesses,

6    and that sort of thing.

7        After the government has completed its evidence, then its

8    attorney will announce that the government rests.  That will

9    mean that the defendant has an opportunity to present evidence,

10   if the defendant wants to.  And then if the defendant has

11   reserved the right to make an opening statement, that's when the

12   defendant would make an opening statement.

13       Then after the defendant has completed the defendant's

14   evidence, if the defendant offers any evidence, then the

15   government would have a chance, through its attorney, to make a

16   rebuttal, offer evidence that would respond to the defendant's

17   evidence.  That usually does not take long if it occurs.

18       Once that happens, then each side will have a few minutes

19   to make a final summation, and it's really an argument at that

20   point in time because the lawyers are reasoning with you as to

21   why they think you should render a verdict consistent with the

22   lawyer's client's position.

23       After the opening statements -- I mean, the final

24   statements have been made, the closing arguments I'll call them,

25   then I'll give you the legal instructions that will guide your

1    deliberations, and then you'll start your deliberations.

2        (End of voir dire examination, 11:38 a.m.)

3                        -o0o-

4                     CERTIFICATE

5        I certify that the foregoing is a correct transcript from
     the record of proceedings in the above-entitled matter.  I
6    further certify that the transcript fees format comply with
     those prescribed by the Court and the Judicial Conference of the
7    United States.

8

9    s/Eileen M. Brewer                    September 14, 2009
     Eileen M. Brewer                      Date
10   Official Court Reporter
     Texas CSR No. 3016

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25